(No. 35312.—

WILLIAM L. MUELLER *et al.*, Appellees, *vs.* MARGARET E. KELLER *et al.*, Appellants.

*Opinion filed January 22, 1960.*

COLIN O. HIGGINS, and LAWRENCE W. HARRIS, both of Chicago, (EDWARD J. FLEMING, of counsel,) for appellants.

NORMAN A. KORFIST, of La Grange, (WILLIAM R. HAZARD, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Amber Slipp, together with William and Lillie Mueller, her vendors and predecessors in title, filed a complaint in equity in the circuit court of Cook County praying that defendants, Margaret E. and Mary Keller, be restrained from interfering with Amber Slipp's use of a private common driveway situated between the premises of the parties, and further asking that defendants be required to remove certain obstructions and to restore the driveway to its former condition. Defendants filed an answer and the cause was referred to a master in chancery who found in plaintiffs' favor. This appeal is prosecuted by defendants from an ensuing decree which granted plaintiffs' the injunctive relief prayed, awarded them monetary damages of $1, and also assessed costs against defendants.

The premises in question, lots 25 and 26 in block 1 of Leiter's Addition to the city of La Grange, are adjoining lots which front upon South Sixth Avenue and have no alley or other means of access to the rear. Plaintiff, Amber Slipp, owns lot 25 having purchased it from her coplaintiffs, the Muellers, under articles of agreement for a warranty deed entered into February 25, 1952. She received a deed pursuant to the agreement on January 6, 1954, nine months after this litigation had started, and it appears she was permitted to withhold $646 of the purchase price, payment of which is contingent upon the termination of this litigation in the plaintiffs' favor. The Muellers, in turn, had acquired their title from William Mandell by a warranty deed dated April 25, 1921. Defendants are the owners of lot 26, where they have resided since 1923, and obtained their title in 1938 through a series of quitclaim deeds executed by the heirs of their father, Otto Keller. The latter had acquired his title to lot 26 in March, 1923,

by virtue of a warranty deed from Fred C. Mandell, a brother of William Mandell. The driveway in controversy occupies five feet on either side of the common lot line between the two parcels and extends from Sixth Avenue to garages at the rear of the respective lots. No deed or other instrument in writing creating or defining the driveway was ever executed by any of the owners, nor is the driveway specifically referred to in any of the deeds above described.

Facts relative to the origin of the driveway reveal that in the year 1900 William Mandell purchased what is now plaintiffs' lot while his brother, Fred C. Mandell, purchased the lot now belonging to defendants. Shortly thereafter the brothers constructed residences on their respective lots and, at or about the same time, a frame garage was built in the rear of Fred's house and a barn, later converted into a garage, to the rear of William's house. They also laid out the driveway which was ten feet wide and centered on the lot line between the two premises. We gather from the record that the drive was surfaced with gravel and that the apron across the parkway to Sixth Avenue was bricked. Lucy Mandell, the wife of Fred C. Mandell, was a witness for plaintiffs in this proceeding and testified she had been told both by her husband and William Mandell that each would give five feet of their property for a common driveway in order to have more lot room for their houses, that both were to keep the drive in repair and share expenses for its upkeep, and that the agreement was to continue for "as long as both houses stood." It is undisputed that both families made common use of the driveway, as did their immediate successors in title, William Mueller and Otto Keller.

William Mueller purchased lot 25 from William Mandell in 1921 and in testifying with regard to the transaction he stated he was assured by Mandell that the latter and his brother had agreed on the driveway when the house

was built, that the agreement was to hold irrespective of who purchased the house, and that the drive could not be closed without the consent of both parties. Although there is no showing that Mueller ever discussed the agreement with Fred Mandell or sought to ratify it, the testimony of Lucy Mandell established that the common use of the driveway continued just as it had been in the past. Similarly, although there is no evidence that Mueller ever discussed the use of the drive with Otto Keller, Fred Mandell's grantee, the record establishes that the Keller and Mueller families continued to make a common use of it without objection or question from the other.

As previously noted, William Mueller sold lot 25 to Amber Slipp who took possession in July, 1950. The latter testified she was told by the Muellers that there was a common driveway, that it had been in existence for fifty years, that it was her driveway, and that she relied upon their assurances. Prior to making the purchase she did not, at any time, consult with defendants concerning the driveway.

Amber Slipp, it appears, started a rooming house on the premises immediately after she took possession. According to her she never had more than twelve roomers at any one time, but a sister of defendants, Viola Keller, testified the number ranged from fifteen to twenty-two. In addition, Amber had two tenants for her garage. While agreeing that most of the roomers had cars, Amber denied that such cars were ever on the driveway, although they were prohibited from parking on the street, and stated they were parked in a lot four doors away. However, by Viola Keller's version, the roomers' use of the driveway was such that her sister Margaret protested to Amber in 1951, and also refused to give Amber permission for such use. Thereafter, in December, 1952, and because of the continued use of the driveway by the roomers, defendants tore up the bricks in the north half of the apron across

the parkway connecting the drive with Sixth Avenue and piled the bricks on the north (defendants') side of the common driveway. They also put in a new drive, entirely upon their own premises, and constructed a new curbing which ran to the common lot line which had marked the center of the old driveway. Additionally, defendants put wooden saw horses and boxes on the old driveway along their side of the line. After plaintiffs' demands for the removal of the obstructions had been ignored, this litigation ensued.

Based upon the foregoing facts, the master found that the parties had mutually acquired an easement over the land of the other by prescription, then added the completely erroneous finding that plaintiffs had an easement over defendants' land by implication. (See: *Walters* v. *Gadde*, 390 Ill. 518; 16 I.L.P. Easements, secs. 16, 17.) The decree appealed from finds only an easement by prescription.

In this court it is the contention of defendants that the agreement made when the driveway was laid out, being an oral agreement, could not and did not create an easement by grant, but was instead a mere mutual license revocable by either party and incapable of ripening into an easement regardless of the length of time it was enjoyed. Plaintiffs, while conceding that an easement cannot be created by parol grant, insist that the oral agreement in the present case created mutual claims of right, as contrasted with a mere license or permissive use, and that by the use made of the driveway under claim of right for a period of over twenty years with the knowledge of defendants and their predecessors in title, plaintiffs acquired an easement over the south five feet of defendants' lot.

It is fundamental that an easement in lands cannot be created by parol but only by grant or prescription, which presumes a grant. (*Lang* v. *Dupuis*, 382 Ill. 101; *Baird* v. *Westberg*, 341 Ill. 616.) For the acquisition of an easement by prescription, the use must be adverse, exclusive,

continuous and uninterrupted, under claim of right, with knowledge of the owner of the land and without his consent, for the statutory limitation period. (*Falter* v. *Packard,* 219 Ill. 356.) Where a right of way has been used openly, uninterruptedly, continuously and exclusively for more than a period of twenty years, the origin of the way not being shown, there is a presumption of a right or a grant from the long acquiescence of the owner. But this presumption is *prima facie* only and may be rebutted, and the facts to admit of such presumption must be established by the greater weight of the evidence. (*Bontz* v. *Stear,* 285 Ill. 599; *Rush* v. *Collins,* 366 Ill. 307.) The burden of establishing a prescriptive right rests on the party pleading it. *Waller* v. *Hildebrecht,* 295 Ill. 116.

A license in respect of real property, on the other hand, is permission to do an act or a series of acts upon the land of another without possessing any estate or interest in such land. (*City of Berwyn* v. *Berglund,* 255 Ill. 498; *Lang* v. *Dupuis,* 382 Ill. 101.) As pointed out in *Boland* v. *Walters,* 346 Ill. 184, an easement is a privilege in land existing distinct from the ownership of the land, and is an estate or interest in itself, whereas a license is merely a privilege to do certain things on the land without being an estate itself. Mere permission to use land cannot ripen into a prescriptive right, regardless of the time such permissive use is enjoyed, (*Rush* v. *Collins,* 366 Ill. 307; *Bontz* v. *Stear,* 285 Ill. 599,) and a parol license is revocable even though consideration has been paid or expenditures have been made upon the faith of the agreement. *Baird* v. *Westberg,* 341 Ill. 616; *Lang* v. *Dupuis,* 382 Ill. 101.

In the present case any presumption of a grant to plaintiffs' predecessors in title has been expressly overcome, inasmuch as the evidence shows without contradiction that the way originated as a result of an oral agreement between the Mandell brothers and that the Muellers, upon whose

period of use Amber Slipp must necessarily depend to acquire an easement by prescription, were fully aware of such origin. The facts likewise show with clarity that the Mandells did no more than to give each other a parol license to use the land of the other within the driveway for a particular purpose, and serve to bring the case within our decisions in *Lang* v. *Dupuis,* 382 Ill. 101, *Boland* v. *Walters,* 346 Ill. 184, *Baird* v. *Westberg,* 341 Ill. 616, and *Bontz* v. *Stear,* 285 Ill. 599. In *Lang, Boland,* and *Baird,* we held that oral driveway agreements closely resembling the agreement in the instant case did no more than to create a permissive use or license to use the common driveway, and that the license was revocable at the will of the licensors. Similarly in *Bontz,* where a road across the plaintiff's land had been in use under a verbal agreement for nearly fifty years and repairs and upkeep shared, we held such a verbal permission to pass over the lands of another could not ripen into a prescriptive right, however long the permissive use is enjoyed. See also: *Illinois Central Railroad Co.* v. *Stewart,* 265 Ill. 35.

To avoid the effect of our prior decisions plaintiffs urge that the oral agreement in the instant case amounted to something more than a mere license or permission, inasmuch as it was the intention of the originators that the mutual use of each other's land was to continue "as long as both houses stood." They say that it was the intention of the Mandell brothers "to vest" in each other a claim of right in the lot of the other affected by use of the common driveway, and contend that such claim of right, even though imperfect, (see: *Leesch* v. *Krause,* 393 Ill. 124; *Schmidt* v. *Brown,* 226 Ill. 590,) together with adverse and uninterrupted use and possession for the statutory period, suffices to invest them with an easement by prescription over defendants' lot. We find the rule to be, however, that unless the evidence is clearly to the contrary, a court will presume that a parol agreement to impress property with

a servitude was made with knowledge of the provisions of the Statute of Frauds, and was therefore intended as a license only and not as an easement or other interest in the land itself. (*Boland* v. *Walters,* 346 Ill. 184.) The presumption has not been overcome in this case by evidence which clearly shows that it was the intention of the Mandells to possess any interest or estate in the land of each other. Indeed, the very language of the agreement upon which defendants rely as establishing a claim of right rather than a privilege characterizes the arrangement as a license and completely negatives the concept that the Mandell brothers sought to confer upon each other either an easement or a parol grant of a claim of right upon which a prescriptive easement could be based after twenty years. While the agreement that the mutual use was to continue "as long as both houses stood" might give rise to a claim that defendants' revocation at this time operates as a fraud upon the plaintiffs, we have found no authority, nor has any been cited to us, that such a provision establishes a claim of right which may ripen into an easement by prescription. In *Bontz* v. *Stear,* 285 Ill. 599, where the oral agreement was that Stear could use a road so long as he shared half the expense and so long as his promisor lived, it was held such facts were not inconsistent with a permissive use of the land. The same result obtains, we believe, from the oral agreement in the instant case.

Nor are plaintiffs aided by *McKenzie* v. *Elliott,* 134 Ill. 156, upon which they strongly rely. In that case we held that where a party purchased a lot upon the assurance that a strip sixteen feet wide should be left as an alley adjoining the lot, which was then staked off, and the purchaser erected buildings and fences on the line of the lot with reference to the alley then used and improved the strip for twenty years, such purchaser acquired a right of way over the alley by prescription. It is enough to point out that the facts of the case disclose a use which was not by mere

permission, as in the present case, but a user pursuant to an agreement fully recognizing that the purchaser was to have an easement in the alley.

Accordingly, it is our opinion that plaintiffs' use of the driveway originated under mere oral permission rather than a claim of right. Inasmuch as a verbal permission to pass over the lands of another cannot ripen into a prescriptive right, regardless of the length of time such permissive use is enjoyed, and because permissive use may be rescinded at any time, it is our opinion that the trial court erred in finding that plaintiffs had acquired an easement by prescription and in granting the resultant injunctive relief.

Courts of equity will restrain the exercise of the legal right to revoke a license when the conduct of the licensor has been such that the assertion of the legal title would operate as a fraud upon the licensee. (*Lang* v. *Dupuis,* 382 Ill. 101; *Boland* v. *Walters,* 346 Ill. 184; *Baird* v. *Westberg,* 341 Ill. 616.) Thus, to do complete equity, the result we have reached makes it incumbent upon us to consider the question whether defendants' revocation will serve to operate as a fraud on plaintiffs. It does not appear that the abandonment of the common driveway will deprive plaintiffs of access to their garage, the finding of the master being only that "common driveway is necessary, *or at least highly convenient and beneficial,* to plaintiffs' property." (Emphasis supplied.) The evidence indicates that plaintiffs have sufficient space to construct a driveway capable of accommodating modern vehicles entirely on their own property along the northern boundary of their lot. And although the substitution of the driveway may cause some expense and inconvenience, we have held such factors do not serve to make the revocation of a license a fraudulent act. (*Boland* v. *Walters,* 346 Ill. 184; *Baird* v. *Westberg,* 341 Ill. 616.) When we consider, too, the circumstances under which defendants revoked the license, it is our opin-

ion there is no evidence of any fraud practiced upon the plaintiffs in this case. Counsel for plaintiffs have cited several cases involving the degree of necessity for alternate routes where an easement is claimed by implication. However, we do not regard these cases as pertinent, inasmuch as none of the prerequisites for an easement by implication are present in this case.

The decree of the circuit court of Cook County is reversed, and the cause is remanded to that court with directions to dismiss the complaint for want of equity and to enter an order fixing costs consistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*