(No. 36152.—

FAYE S. PETERSEN, Appellee, *vs.* ALYENE PREHN CORRUBIA *et al.*, Appellants.

*Opinion filed March 29, 1961.*

526

John H. Finfrock, of Urbana, for appellants.

Thomas, Mulliken & Mamer, of Champaign, for appellee.

Mr. Justice Bristow delivered the opinion of the court:

Faye S. Petersen filed a complaint in equity in the circuit court of Champaign County praying that the defendants' be restrained from interfering with the plaintiff's use of a common driveway or areaway situated in back of the store building of the plaintiff and the defendants. Defendants filed an answer and the cause was referred to a master in chancery who found for the plaintiff and, this appeal is prosecuted by defendants from an ensuing decree which granted plaintiff the injunctive relief prayed.

On or about the year 1927, lots 4, 5, 6, 7 and 8 of Wolf Lewis Subdivision, located in the campus business district in the city of Champaign, were owned by five separate individuals. These individuals desired to improve their respective lots by building five commercial buildings (hereinafter called the Green Street buildings) containing one heating plant and a common second floor. The owners of these five lots first planned to construct the Green Street buildings to a depth of 132 feet, extending from Green Street on the north to a pre-existing dedicated easement south of the lots. These plans were revised when arrangements were made to construct a building for postoffice use on the south 54 feet of all five lots, adjacent to the dedicated strip. This is now the Hayes building. The owners of the lots subsequent to the plans providing for the postoffice building (hereinafter called the Hayes building), but prior to the construction of either the Green Street or Hayes buildings, left a 12-foot wide areaway across the rear of all the lots to service the Green Street buildings. It is clear that the inclusion of the 12-foot wide areaway was to be a substitute

for the loss of access to the pre-existing easement which would be caused by the construction of the Hayes building. The Green Street buildings were constructed with a common design, each being 66 feet in depth with a 22-foot frontage on Green Street. All of the buildings had doorways opening on to the areaway. At the time the Green Street buildings were constructed, a common heating plant was provided and the areaway was used, among other things, for the delivery of coal and to otherwise service this heating plant. The single furnace was in the Green Street buildings and an oil tank was under the Hayes building. Later, some of the separate owners installed their own heating plants, but coal is still being used by some, and the delivery of both coal and oil is through the areaway. The evidence shows the areaway was put there to provide space for fuel trucks to deliver their fuel and to provide for garbage disposal; that a storm sewer and gas main were installed in the concrete areaway, and that the areaway was created by common consent so that all owners could use it. The Green Street buildings were so constructed as to have an undivided second story with a common entrance in the center of the buildings, which was to be used by all of the owners and their tenants. The second floor was operated and leased by the joint action of the owners of the separate lots. It appears, however, that the original owners individually retained title to their respective lots. There is a crosswalk at the second-story level connecting the second stories of the Green Street and Hayes buildings. Two fire escapes from the second floor of the Green Street buildings abut the areaway.

Thereinafter the various Green Street lots were sold and the plaintiff became the owner of lot 4 by purchase from Jerome J. Sholem, on or about October 18, 1945. The evidence shows, however, that the plaintiff apparently had moved into the building earlier and had been running a

florist shop there since 1941. It does not appear from the record just when defendants, who are presently the owners of lots 6, 7 and 8 took title or possession from the original owner or owners of those respective lots.

The evidence further shows that all the plaintiff's supplies and merchandise enter her premises through the areaways and that there is no parking space normally available on Green Street, and that double parking is not allowed. It further appears that while the jointly owned and leased second floor of the Green Street buildings was originally heated by the central heating system, such proved to be insufficient and the plaintiff, a year or so before this litigation commenced, was compelled to install a furnace on her lot to supply the additional heat to the premises leased and operated in common. The fuel to service this system was and has continued to be delivered by trucks solely through the areaway.

From 1928 to 1959 it appears that the areaway was open and continuously in use by and for all of the owners of the Green Street buildings inasmuch as fuel was delivered, refuse was removed, and the merchandise and supplies for the various stores were being loaded and unloaded through the way; from the beginning, the areaway was being used for the contemplated purpose of servicing the Green Street properties.

In February of 1959 the defendant, Julius J. Corrubia, wrote a letter to the plaintiff, in which he sought to buy the space behind the plaintiff's store and stated that he was attempting to purchase the space behind Mr. Anderson's building (lot 5, and which premises, being one of the Green Street buildings also abutted the areaway) so that he could close the alley up and build a building to house a proposed commercial venture. Nothing appears to have occurred thereafter until October of 1959 when the defendants placed a chain at the rear of their premises across the only opening

of the areaway, and the instant litigation ensued. The foregoing factual picture stands uncontradicted, the defendant having elected to offer no proof.

It is defendants' principal contention on appeal that the original owners of lots 4, 5, 6, 7 and 8, on or before they built the buildings located upon the various lots, entered into an oral agreement, whereby consent was given by each of the owners that the south 12 feet of their respective lots could be used for ingress and egress to their respective premises. That the agreement, being oral, could not and did not create an easement by grant but was instead a mere mutual license or permissive use, revocable by any of the owners at any time and was not an adverse use to the owners of the various lots which could ripen into an easement by prescription although the use had been in existence for more than 20 years. To this contention plaintiff contends that a claim of right has existed for more than 20 years, as a result of a grant implicit in the acts of the early owners who created the buildings; that the use of the areaway, having been uninterrupted, continuous and adverse under such claim of right for more than the prescriptive period, has ripened into an easement. It was upon this basis that the master found for the plaintiff. In addition, it is plaintiff's position that the injunction decree is to be sustained inasmuch as she and her predecessors have used the way openly, uninterruptedly, continuously and exclusively for more than a period of 20 years, and that, the origin of the way being not clearly and exactly shown by the evidence, therefore a presumption of right or grant arose from the long acquiescence of the party upon whose land the way exists, and that such presumption was not rebutted by the defendant. Plaintiff also suggests that even if the use of the areaway was permissive, to permit the defendants to revoke such license or permission would operate as a fraud upon the plaintiff.

The competing legal principles are clear. Mere permission to use land cannot ripen into a prescriptive right, regardless of the length of time such permissive use is enjoyed. (*Mueller* v. *Keller*, 18 Ill.2d 334; *Bontz* v. *Stear*, 285 Ill. 599.) There is, however, a rebuttable presumption of a grant or adverse right present where a way has been used openly, uninterruptedly, continuously and exclusively for more than 20 years and the origin of such way is not shown. In the absence of evidence tending to show the use of the way to have arisen from a license or other special indulgence which is either revocable or terminable, the conclusion is that it has grown out of a grant by the owner of the land, and has been exercised under a title so derived. The facts to admit of such presumption, however, are not presumed but must be established by the greater weight of the evidence. *Rush* v. *Collins*, 366 Ill. 307; *Bontz* v. *Stear*, 285 Ill. 599.

In order to claim a prescriptive right, the use must have been adverse, uninterrupted, exclusive, continuous and under a claim of right. Exclusive, however, does not mean that no one may or does use the way, except the claimant of the easement. It means no more than that his right to do so does not depend upon a like right in others, and it does not mean that the claim is necessarily well founded. A user under a contract unenforceable under the Statute of Frauds is a good claim of right. *Rush* v. *Collins*, 366 Ill. 307; *Schmidt* v. *Brown*, 226 Ill. 590.

Whether the agreement is to operate as a license or as the basis for a claim of right depends primarily upon the language employed by the parties. If the language is such as to create a license only, the enjoyment under it is to be regarded as permissive and not of right, and no title is acquired under it, however long continued. If, on the other hand, the language and conduct of the parties purport to give a right to the way and the use is continued under such

claim of right for 20 years, the use is adverse and will ripen into a prescription. *Schmidt* v. *Brown*, 226 Ill. 590, 597.

Whether there was adverse use of the way under a claim of right for a period of 20 years, or the use of the way is only permissive, is almost wholly a question of fact, (*e.g., Rush* v. *Collins*, 366 Ill. 307,) and unless the evidence is clearly to the contrary, a court will presume that a parol agreement to impress property with a servitude was made with knowledge of the provisions of the Statute of Frauds, and was therefore intended as a license only and not as an easement or other interest in the land itself. *Boland* v. *Walters*, 346 Ill. 184.

Evidence casting light upon the origin of the areaway is found in the testimony of William B. Hayes, which clearly showed that the separate owners of the five lots made a parol agreement to provide the 12-foot wide areaway across the rear of all the lots to serve the Green Street buildings, for the common use of each owner, and that the decision was made prior to the construction of either the Green Street or Hayes buildings. While the specific terms of such agreement do not appear, it is plain from the owners' conduct in the subsequent design and construction of the Green Street buildings that the areaway was an integral part of their purpose and function, individually and as a whole. The closing of the areaway would have deprived each owner of the service area at the rear of each of the commercial stores and would prevent similar access from the Hayes building. It would have deprived them of access to the common heating plant and the services needed for it, as well as depriving them of the method of conducting a mercantile business, which, as the master found, was the original purpose of the Green Street buildings.

Defendants' contention that plaintiff by her testimony expressly disavowed a claim of right to any use of the areaway is unavailing in the light of all the evidence. It is not

essential that there should be proof that plaintiff made any oral declaration of a claim of right, but it is sufficient if the proof shows that she has acted so as to clearly indicate that she did claim the right to such use. (*Poulos* v. *F. H. Hill Co.* 401 Ill. 204.) The admitted commercial purpose, design and construction of the buildings, containing from their inception substantially integral and patent features requiring the construction and use of the areaway, which areaway has been continually and openly used by the plaintiff and her predecessors for ingress and egress and in a manner otherwise consistent with the originally contemplated use and maintenance of the Green Street properties, is sufficient indication and assertion of a claim of right to use the areaway. The character and circumstances of the use were such as to indicate it was under a claim of right. *Poulos* v. *F. H. Hill Co.* 401 Ill. 204; *Rush* v. *Collins,* 366 Ill. 307; *Sell* v. *Finke,* 295 Ill. 470, 477.

Our decisions in *Mueller* v. *Keller,* 18 Ill.2d 334, 342 and *Bontz* v. *Stear,* 285 Ill. 599, wherein we found a permissive use to have existed, are readily distinguishable. In *Mueller,* the oral agreement for mutual use of a way was to continue "as long as both houses stood." In *Bontz,* the oral agreement provided for use of a road so long as the parties shared the expense and so long as the promissor lived. Neither case involved the use of a way where, absent the assurance of continued existence and use in common, the original owners would not likely have jointly expended large sums of money upon commercial buildings of the character and design shown by the evidence in this case.

Although the agreement was not executed in conformity with the Statute of Frauds, such does not necessarily preclude the existence of an easement. (*Schmidt* v. *Brown,* 226 Ill. 590; *Mueller* v. *Keller,* 18 Ill.2d 334.) The master and the chancellor were warranted in finding the presumption of license under the parol agreement (*Boland* v. *Wal-*

*ters,* 346 Ill. 184; *Mueller* v. *Keller,* 18 Ill.2d 334,) to have been overcome by the evidence and that plaintiff has an easement by user under claim of right, and that such claim, even though incapable of enforcement because of the Statute of Frauds, together with adverse, exclusive, and uninterrupted use for over 20 years, invested the plaintiff with an easement by prescription. *Schmidt* v. *Brown,* 226 Ill. 590.

Another very compelling reason why we think the decree entered herein is equitable and proper, is that even though the mutual use of disputed areaway did not ripen into an easement, this court will not permit the owner of property to revoke a license if in doing so it will operate as a fraud. *Mueller* v. *Keller,* 18 Ill.2d 334; *Lang* v. *Dupuis,* 382 Ill. 101; *Boland* v. *Walters,* 346 Ill. 184; *Baird* v. *Westberg,* 341 Ill. 616.

The vehicular and pedestrian traffic on Green Street in front of plaintiff's property is extremely heavy, parking meters are in operation there and the double parking regulations are strictly enforced. The uses of the alley that we have heretofore described are almost completely unavailable to the plaintiff by use of the front entrance.

It appears that to preclude plaintiff from access to and use of the disputed areaway will result in more than simply expense and inconvenience. While the abandonment does not appear to completely deprive the plaintiff of physical access to her premises, nonetheless the evidence amply warrants this court in finding that the commercial value and use for which this store was originally intended, built, and occupied, would be seriously impaired. For 31 years the five units have enjoyed the uninterrupted use of this area.

The contention of defendants that the evidence does not justify the tacking of any use of the way by the plaintiff to the use of her predecessor in title is without merit. The evidence shows that plaintiff and her predecessors each used the areaway in a manner consistent with the mutual claim

of right originally established. The right to the use of the areaway was appurtenant to plaintiff's premises. It was an incident to those premises and, inasmuch as the evidence shows a chain of title in the premises running from the original parties who took part in the construction of the building to the plaintiff, the tacking of the use was permissible. (*Cf. Goodwillie Co.* v. *Commonwealth Electric Co.* 241 Ill. 42, 77-78.) Such appurtenance runs with the land and passes by a conveyance without any reference to it. *Schmidt* v. *Brown,* 226 Ill. 590, 602, 603.

Having concluded that the plaintiff is entitled to an easement by prescription in the area in question, it is not necessary to consider the alternative basis for upholding the lower court's decision.

For the above reasons, the decree of the circuit court of Champaign County is affirmed.

*Decree affirmed.*