Louis G. Ritter, Plaintiff and Counter-Defendant-Appellant, v. Milton Janson and Helen Janson, Defendants and Counter-Plaintiffs-Appellees.

**Gen. No. 66–104.**

Fifth District.

February 24, 1967.

Floyd E. Crowder, of Columbia, and Walker & Williams, of East St. Louis, for appellant.

Weihl & Weihl, of Waterloo, and Kassly, Weihl, Carr & Bone, of East St. Louis, for appellees.

MORAN, P. J.

This is an appeal from a judgment of the Circuit Court of Monroe County (1) granting the defendants' counter-claim to quiet their title to a space between plaintiff's and defendants' buildings, which space will hereinafter be referred to as a passageway, and to enjoin the plaintiff and the public from setting up any right or title to the property, and (2) dismissing the plaintiff's complaint which sought to compel the defendants to remove an alleged obstruction from the passageway, and to restrain defendants from interfering with the use of the passage-

way, or, in the alternative, to quiet the plaintiff's title to a prescriptive easement for the use of the passageway.

The defendants, Milton and Helen Janson, own tax lot 57 in the City of Columbia; the plaintiff, Louis Ritter, owns the adjoining tax lot 58. The original brick buildings constructed on these lots prior to 1905 face Main Street and occupy only the front part of the said lots. Between the buildings there is a space approximately twelve feet in width which extends from Main Street to a twenty-foot alley at the rear of the lots. The side of the Ritter building abuts on this passageway and is set back eight inches from the property line dividing lots 57 and 58, so that the width of the passageway between the buildings includes eight inches of the Ritter lot and eleven feet, seven inches of the Janson lot.

Plaintiff Ritter derives his title through his father, who, prior to 1905, owned the front part of lot 58 which abutted on Main Street. In 1905, the Columbia Star Milling Company owned the rear parts of both lots 57 and 58 and conveyed the rear part of lot 58 to the plaintiff's father. There is no grant of any rights in the passageway in either of the deeds in plaintiff's chain of title.

The defendants Janson trace their title from Frederick Meyer. In 1905 the Columbia Star Milling Company owned the rear part of lot 57 and conveyed it to Frederick Meyer, who at that time owned the front part of lot 57. At the same time as the conveyances to Ritter and Meyer, the Milling Company dedicated a twenty-foot alley at the rear of both lots 57 and 58. After Frederick Meyer's death in 1925, his widow owned the property until 1932. In 1937, her heirs conveyed it to John Mueller, who owned it until his conveyance to the defendants Janson in 1949. There is no reservation or grant of any rights in the passageway in any of the deeds in Janson's chain of title.

None of the witnesses who testified knew the exact origin of the passageway. The plaintiff Ritter testified

171

that it came into existence in 1905 when the parties acquired the rear parts of Lots 57 and 58 from the Milling Company.

The particular controversy was precipitated in 1965, when the defendants began construction of a garage at the rear of lot 57. Upon completion, the garage extended sixteen inches into the passageway and a rock slope extended an additional two feet, three inches into the passageway. At the edge of the garage, the rock slope is about one foot in height and, at the far edge, there is not much elevation. Shortly after construction was begun, the plaintiff demanded that Janson cease construction and remove the obstruction. The defendants continued to build and this case ensued.

The trial court's decree contained the finding that:

> (T)he use of said passageway for ingress and egress has been with permission and consent of defendants and their prior grantors in the chain of title, and at no time did plaintiff or any person or persons assert any adverse claim to an easement for ingress and egress as against defendants and their prior grantors until on or about July 8, 1965, when defendants constructed an extension to their existing garage and banked rocks around the base of said extension. . . .

The trial court then decreed that "any pretended claims in and to any portion of defendants' premises described in paragraph 2 of this decree be removed as a cloud upon the title of defendants to said above described premises."

The mere permissive use of land cannot ripen into a prescriptive right. Rush v. Collins, 366 Ill 307, 8 NE2d 659; Mueller v. Keller, 18 Ill2d 334, 164 NE2d 28. However, with regard to land, which is not vacant, open, or unenclosed, where a way has been used openly, uninterruptedly, continuously, and exclusively for more

172

than a period of twenty years, and where the origin of the way is not shown, there is a rebuttable presumption that a grant or an adverse right is present. Leesch v. Krause, 393 Ill 124, 65 NE2d 370; Poulos v. Hill Co., 401 Ill 204, 81 NE2d 854; Petersen v. Corrubia, 21 Ill2d 525, 173 NE2d 499. But the facts which give rise to this presumption must be established by the greater weight of the evidence. Bontz v. Stear, 285 Ill 599, 121 NE 176; Parker v. Rosenberg, 317 Ill 511, 148 NE 269; Petersen v. Corrubia, supra.

The evidence in this case indicates that the passageway was not vacant, open or unenclosed and that its use was open, continuous, and uninterrupted for more than twenty years. There was testimony that there were short periods of time when the Jansons left their car parked in the passageway and a short period of time in which the Jansons had erected a scaffolding for use in the repair of their building. This evidence is not conclusive, however, in determining whether the use was uninterrupted and was properly considered by the trial court. Furthermore, a review of the testimony indicates that the origin of the passageway has not been sufficiently shown. It is known only that the passageway was created at the time when the Milling Company conveyed the rear parts of Lots 57 and 58 and dedicated the public alley at the rear of the lots. The origin is not shown, for instance, as it is in Piper v. Warren, 61 Ill App2d 460, 210 NE2d 71.

■ The requirement that the passageway's use be exclusive does not mean that no one may or does use the passageway, except the claimant of the easement. Rather, it means that his right to do so does not depend upon a like right in others. Schmidt v. Brown, 226 Ill 590, 80 NE 1071; Rush v. Collins, supra; Petersen v. Corrubia, supra.

The plaintiff argues that an exclusive use was clearly shown by (1) his use of the passageway showing a

claim of right, (2) his understanding with Frederick Meyer that he had the right to use the passageway and that the use could not be stopped, and (3) his father's construction of a coal shed in 1905 with windows opening onto the passageway. However, there was contrary testimony. The plaintiff testified that he never told anyone that he had a right to use the passageway. Then, too, the plaintiff's use of the passageway is consistent with existence of a permissive use. Alois Meyer testified that his recognition of the plaintiff's use was as a matter of right. However, he further testified:

> My granddad and my dad and my uncle told me there was an understanding they had among themselves. How—if our family gave it to them, I do not know but that is my understanding of right as neighbors. . . . This was an understanding among neighbors. If you don't have that kind of understanding the whole neighbors don't mean anything.

Furthermore, he stated that the understanding applied to others. "Yes, it wasn't just Ritter alone. There was a lot of people using that alley, walking or riding." The understanding applied generally to whoever wanted to use it. This testimony explains the witness's use of the word "right" and creates a question as to the existence of a right to use the passageway. Finally, concerning the coal shed, there was testimony that, in addition to the windows opening onto the passageway, there were doors opening onto the public alleyway at the rear of the lot.

All of the evidence indicates that there was a substantial fact question concerning the exclusive use of the passageway, a question which the trial court determined in favor of the defendants. Contrary to the contentions of the plaintiff, the presumption of a lost grant does not arise; for, according to the fact finder, all of the facts which give rise to the presumption were not estab-

lished by the preponderance of the evidence. The findings of a trial court will not be disturbed unless they are manifestly against the weight of the evidence. Brown v. Zimmerman, 18 Ill2d 94, 163 NE2d 518. Furthermore, the determination whether there was an adverse or a permissive use of an alleyway is almost wholly a question of fact. Rush v. Collins, supra.

 Since the findings of the trial court are not against the manifest weight of the evidence, the decree of the trial court must be affirmed.

For the foregoing reasons, the judgment of the trial court is affirmed.

Judgment affirmed.

EBERSPACHER and GOLDENHERSH, JJ., concur.