Rita Sales Corporation, an Illinois Corporation, Plaintiff-Appellant, v. Robert Bartlett and First National Bank of Moline, a National Banking Association, Defendant-Appellee.

Gen. No. 70-19.

Third District.

September 16, 1970.

Herbert M. Spector, of Rock Island, for appellant.

Virgil Bozeman, of Moline, for appellee.

ALLOY, J.

The record in this case discloses that Michael Rita, president of Rita Sales Corporation, purchased a number of lots and a building in Moline, Illinois, in 1945 on behalf of plaintiff. Following some minor grading of the lots, plaintiff began use of the adjoining lot, to the north of the property purchased, for the purpose of driving trucks and equipment over such lot when entering and leaving the north doors of the building purchased by plaintiff. This use by plaintiff continued for certain periods until April, 1969, when the owner who had acquired the lot to the north of plaintiff's property informed plaintiff that such owner intended to use the lot north of plaintiff's property for the purpose of constructing a building across from the north doors of plaintiff's building to within three feet of plaintiff's property line. Plaintiff sought an injunction to prevent defendant from building in the area which plaintiff had been

using on the theory that plaintiff had obtained an easement by prescription to the use of a portion of the adjoining lot (50 by 75 feet). Following a hearing in that cause, the trial court in Rock Island County dismissed the complaint.

The president of plaintiff corporation (under a long-term contract) purchased lots 16, 17 and 18 in a subdivision in the City of Moline. Adjoining lot 18 on the north was lot 19, which was followed by lots 20 through 22. Each lot was approximately 50 feet north and south by 150 feet east and west. The Rita contract was made with persons named Finkelstein, who, at the time of the making of the contract in 1945, owned lots 16 through 22. At the time when plaintiff took possession, in January 1946, there was a small 27 by 72-foot building on the northeast corner of lot 18, about 6½ feet south of lot 19. While Michael Rita testified that when he purchased the building in 1945, there were doors on the north end of the building, he answered, on cross-examination, that he did not recall sliding doors at that location. There was a conflict of evidence as to whether there were any doors on the north side of the building at the time. It was, however, clearly shown that there were doors on the east side of the building which opened out onto an alley (not the property over which an easement is claimed).

The evidence also disclosed that in January 1946, before any vehicle could enter through the north door of the building on lot 18, a two-foot dip just north of the doors had to be filled in with dirt. This filling was done by Rita and his employee. At this time in 1946, lot 19 was vacant, and Rita and his employee completed the approach to the north door of the building on lot 18 by putting down cinders and gravel to make a roadway all the way east to the alley. There was no conversation or agreement, written or oral, between plaintiff and the owner of lot 19 at the time plaintiff began use of

48

lot 19 in 1946. This use of lot 19 was continued at various times for various activities. There is some conflict as to the extent of plaintiff's use of the building and the adjoining lot and as to the continuity of such use during these years. From 1946 to 1953 the building which stood on lot 18 was used for painting and repairing house trailers. The trailers were brought in after being pulled across lot 19. In 1954 Rita added a concrete building on the west side of the original building. From 1956 to 1961 plaintiff made the most extensive use of his buildings, and of lot 19 at a time when plaintiff constructed house trailers. The trailers would be started in the east building and taken across lot 19 and pulled into the building on the west. From 1961 through 1964, the building housed a used car business and there was no manufacturing in any of the buildings. While Rita testified that they regularly used the north doors from 1961 through 1969, there was testimony to the contrary. A man who operated a pattern shop on the lots to the north of lot 19 testified that during the period between 1967 and 1969 he only saw the north doors of plaintiff's building open two or three times a year.

The owner of lot 19 (prior to the sale to defendant Robert Bartlett) testified that in the last 5 or 6 years before trial he had never seen the north doors open on the Rita building. Such owner, Mr. Sandberg, also testified that in 1964 Rita tried to buy from him that portion of lot 19 just north of his building. In 1965 Rita asked Sandberg if Sandberg would allow a lessee of Rita to use the east-west driveway on lot 19, and Sandberg agreed to such use. At one time in the period between 1965 and 1969, Rita had delivery trucks, people working, and trailers all over lot 19 and even in front of Sandberg's building on the west part of lots 21 and 22. Sandberg finally told Rita to get them off the driveway but that Rita could park on the factory lot. Rita testified that he never talked to anyone about the use of lot

19 during the time he used it. Another witness who walked past the Rita building on his way to work daily testified that he observed the use of the north doors in the Rita building and that use had been made of such doors for 15 years, with the longest period of nonuse being about a month. An attorney, who examined the abstract in 1969 when defendant Bartlett purchased lot 19, testified that he made a physical examination of the property to determine whether use was being made of lot 19 by the plaintiff, and from the weeds on lot 19, it did not appear that any use was being made of lot 19.

Rita obtained his deed to lot 18 in 1954. In 1948, prior to the conveyance to Rita, the Finkelsteins sold lots 19 through 22 to Sandberg. In May 1967, Robert Gardner purchased lots 19 through 22 from the Sandbergs and lot 19 at this time was grown up with trees and brush in the back of the Rita building. Gardner had to cut these down and bulldoze the area before he could even see the Rita building on the north part of lot 22.

In March 1969, Rita considered a sale of his buildings. A real estate dealer brought a Mr. Robinson to look at the Rita buildings. When Robinson was informed that Rita's north line was just a few feet from the north doors of the two buildings, Robinson said he must have assurance that he could use these north doors before he purchased the property. Rita took Robinson to see Mr. Gardner who owned lot 19. Rita told Robinson that Gardner was a "good guy" and that he thought Robinson could make an arrangement for the use of lot 19. After explaining what Mr. Robinson wanted, Rita left Robinson alone with Mr. Gardner. Robinson made an offer for Rita's property and a part of the Gardner property, and both offers were rejected. Robinson then purchased lots 19 through 22 from Gardner, with title being placed in the names of defendants, Robert Bartlett, and First National Bank of Moline. Two days before clos-

ing the transaction, Robinson, Gardner, and an attorney went to talk with Rita and told him they planned a building 200 by 60 feet on lot 19, which would come within three feet of Rita's north line. Rita made no claim at this time of a right to use lot 19, although there was some discussion by Rita that he would be blocked off from his north doors. Robinson offered to consider a door in their new building through which plaintiff could enter and it was stated by Robinson "maybe I'll work out something else if you need them desperately," referring to the north doors. This was the last discussion between plaintiff and defendant's representative. After purchase of the property, defendants graded lot 19 in such a manner that plaintiff could not drive out the north doors. Plaintiff sought an injunction to establish a 50 by 75 foot easement across the east end of lot 19. As indicated previously, the trial court, after hearing all of the evidence, dismissed the complaint.

In determining whether the trial court correctly dismissed plaintiff's complaint, following the hearing on the merits, it is necessary to determine whether plaintiff acquired an easement by prescription over a portion of defendants' lot 19 by plaintiff's use as established in the record. There appears to be no dispute between plaintiff and defendant as to the applicable law in the case before us. As stated by the court in Poulos v. F. H. Hill Co., Inc., 401 Ill 204, 214, 81 NE2d 854:

". . . to establish a way by prescription the use must be adverse, uninterrupted, exclusive, continuous and under a claim of right for a period of twenty years."

Where the use is merely permissive (from the owner) it is not adverse and furnishes no basis upon which a right of way by prescription can rest (Waller v. Hildebrecht, 295 Ill 116, 123, 128 NE 807). Essentially, to establish

an easement by prescription, the use must be of such character as is required to establish title to land in fee by adverse possession (Rose v. City of Farmington, 196 Ill 226, 227, 63 NE 631).

██ ██ The question of establishment of an easement by prescription is nearly always a question of fact (Petersen v. Corrubia, 21 Ill2d 525, 532, 173 NE2d 499). In the Petersen case the court stated specifically (at page 532) that whether there was an adverse use of the way under claim of right for a period of 20 years, or whether the use of the way is only permissive is almost wholly a question of fact, and, unless the evidence is clearly to the contrary, "a court will presume that a parol agreement to impress property with a servitude was made with knowledge of the provisions of the Statute of Frauds, and was therefore intended as a license only and not as an easement or other interest in the land itself."

██ It is contended by the plaintiff that a prescriptive right has been established in accordance with the language of Petersen v. Corrubia, supra. In that case the court stated (at page 531):

> "There is, however, a rebuttable presumption of a grant or adverse right present where a way has been used openly, uninterruptedly, continuously and exclusively for more than 20 years and the origin of such way is not shown. In the absence of evidence tending to show the use of the way to have arisen from a license or other special indulgence which is either revocable or terminable, the conclusion is that it has grown out of a grant by the owner of the land, and has been exercised under a title so derived. The facts to admit of such presumption, however, are not presumed but must be established by the greater weight of the evidence."

Such presumption is prima facie and may be rebutted. This presumption, to which appellant refers, however,

is not applicable to situations where there is use of vacant land. As stated in Waller v. Hildebrecht, 295 Ill 116, 123, 128 NE 807:

> "The use of vacant, uninclosed and unoccupied land will be presumed to be by permission and not adverse."

The court in Poulos v. F. H. Hill Co., Inc., 401 Ill 204, at 214, 81 NE2d 854, in discussing the presumption relating to vacant land stated:

> "The use of vacant and unoccupied land is presumed to be permissive and not adverse, and permissive use can never ripen into prescription no matter how long such permissive use exists. The burden in most cases of establishing the prescriptive right rests on the party pleading it and all elements must be distinctly and clearly proven."

■ In view of the facts in the instant case, we do not believe that the trial court was in error in finding that plaintiff did not obtain an easement by prescription. At the time plaintiff acquired lot 18 in 1945, the adjoining lot 19 was vacant and unoccupied and remained in this condition when plaintiff began using lot 19 as a driveway. There was, therefore, no presumption that such use amounted to a claim of an easement. As we have indicated heretofore, presumption of a grant of an easement does not come into operation where the original use is of vacant or unoccupied land. Likewise, for such presumption of an easement to arise, the courts state that there should be "no evidence to show the origin of the way." In the case before us, there was evidence to show the origin of plaintiff's alleged easement by prescription. Shortly after plaintiff purchased lot 18, he leveled the ground on lot 19 north of lot 18 and began to use the north doors of the building standing on lot 18. The building on lot 18 had doors to the

east opening on the alley which allowed plaintiff access to his building. The origin of the way in the instant case is known, and such fact, coupled with the fact that this original use was of vacant and unoccupied land, makes it clear that in the instant case there is no presumption of an easement arising from the mere use by plaintiff. Since there was no presumption of such easement to aid proof of plaintiff, the burden was on plaintiff to show the existence of each of the elements needed to establish the easement by prescription. We do not believe plaintiff sustained such burden, and we conclude that the trial court correctly dismissed the complaint.

■■■ The record also fails to show a sufficient adverse use by plaintiff, since there was no evidence that Rita ever claimed a right to the use of lot 19. No conversation was shown to have occurred when plaintiff began using lot 19 in January 1946. There is no evidence of any statement by Rita or an agent of the corporation that such right to use lot 19 was claimed. In 1965, Rita asked the owner of lot 19, Mr. Sandberg, if a lessee of Rita could use a portion of lot 19. There was also evidence that, at one time in 1964, Rita tried to buy a portion of lot 19. There was also evidence that at one time during the period from 1965 to 1969, Rita had trucks, trailers and individuals working for him on all the lots from 19 through 22 with the owner's permission, and that the owner of lot 19 requested Rita to remove them, which he did. Also, in 1969, when Mr. Robinson talked to Rita about buying lot 18 from Rita, Rita told Robinson he would introduce him to Robert Gardner who then owned lot 19, and that Robinson might be able to work something out with Gardner as to lot 19. All of these acts and statements by Rita were properly considered by the court in support of the conclusion that Rita had claimed no right to the use of lot 19. Since the evidence did not affirmatively show that Rita claimed such right, it is clear that the trial court

54

could properly have concluded that the use by Rita was not adverse.

It is contended that the acquiescence by defendants and their predecessors in title showed that an easement by prescription had been obtained. On the basis of the record, the acquiescence by the owners of lot 19 would be consistent with a permissive use by plaintiff, even if plaintiff had shown a continuous use of lot 19 for over 20 years. As stated in Waller v. Hildebrecht, 295 Ill 116, 124, 128 NE 807:

> "A mere permissive use never ripens into a prescriptive right. It must appear the use was enjoyed under such circumstances as to indicate that it was claimed as a right and was not regarded by the parties as a mere privilege or license, revocable at the pleasure of the owner of the soil. The use of a way without objection or hindrance is not inconsistent with use by permission. (Chicago, Burlington and Quincy Railroad Co. v. Ives, 202 Ill 69; Stewart v. Andrews, 239 id. 186.) It is a matter of common observation that the public makes use of any open, uninclosed space which affords a more convenient way of reaching any given place than the regular way would, and it would be contrary to established legal principles, and to natural justice as well, to allow the public, under such circumstances and by the mere acquiescence of the owner, to acquire the permanent right of way."

In the case before us, the evidence did not establish that the use by plaintiff was adverse. A permissive use never ripens into a prescriptive right (Waller v. Hildebrecht, 295 Ill 116, 128 NE 807; Monroe v. Shrake, 376 Ill 253, 33 NE2d 459; Rose v. City of Farmington, 196 Ill 226, 63 NE 631). Plaintiff contends that the construction of a new building in 1954 and 1956 on his north line, with doors opening on lot 19, showed that he

claimed an adverse use. We do not believe that this is sufficient to change plaintiff's use from a permissive to an adverse use, since there was no evidence that he claimed a right to use lot 19, as indicated by his conversation with Mr. Robinson some ten years after the construction of such building. Mere acquiescence of the owner of lot 19 in such use would not be inconsistent with a permissive use.

In summary, plaintiff contends that his use alone of lot 19 over a 20-year period was sufficient. Even assuming such uninterrupted use (which is questioned), plaintiff failed to show that such use was ever adverse. In fact, such use was presumed to be permissive use, and a permissive use will never ripen into an easement by prescription. As stated in Rose v. City of Farmington, 196 Ill 226, at 229, 63 NE 631:

> "There is nothing in the testimony to show that appellant or any of her grantors, or anyone else, ever claimed an adverse right to the use of this supposed way. All the testimony is consistent with the permissive use of the same because the owner did not need it for his own use,—was disposed to be accommodating to his neighbors."

Plaintiff also contends that he obtained an easement by implication over lot 19. As stated in Walker v. Witt, 4 Ill2d 16, 21, 12 NE2d 175, easements by implication require certain elements as follows:

> "(1) there must be a separation of title; (2) before the separation occurs, the use which would give rise to an easement must have been so long continued, obvious or manifest to that degree which will show the use was meant to be permanent; and (3) it is necessary that the use of the claimed easement be essential to the beneficial enjoyment of the land granted or retained."

In 1945 there was no evidence to show that any use of the building on lot 18 also necessarily involved driving over lot 19. There were doors on the east side of the building on lot 18 when plaintiff purchased it, and there was even a question as to whether any doors existed on the north side of the building on lot 18 at the time of purchase. There was no long-continued obvious and manifest use of lot 19 in conjunction with the use of the building on lot 18, which must have been intended to be permanent.

On the basis of an examination of the entire record, therefore, we conclude that the judgment of the Circuit Court of Rock Island County was proper and should be affirmed.

Affirmed.

RYAN, P. J. and STOUDER, J., concur.