EDWIN ROLLER, Plaintiff-Appellant, *v.* LOGAN LANDFILL, INC., Defendant-Appellee.

(No. 12081; ▮▮▮▮▮▮▮▮▮

Fourth District—February 14, 1974.

R. Michael Fischer, of Alton, for appellant.

Harris and Harris, of Lincoln, for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Plaintiff Edwin Roller brought suit against defendant Logan Landfill, Inc., seeking to enjoin defendant's alleged trespass on his property. De-

fendant replied by contending that its presence on plaintiff's property was lawful due to the existence of a prescriptive easement over plaintiff's property benefiting defendant's landfill. At the conclusion of the bench trial, judgment was entered in favor of defendant. The plaintiff appeals.

We need only decide that issue which is dispositive, notwithstanding the fact plaintiff raises several issues on appeal. Plaintiff urges that the trial court erred in finding a prescriptive easement existed in favor of defendant's estate. Also in this appeal is the question of whether defendant should be granted reasonable expenses and attorney fees pursuant to Illinois Revised Statutes 1971, chapter 110, paragraph 41, incurred in opposing plaintiff's motion for disqualification of one of the judges of this court.

Plaintiff filed his complaint on June 15, 1970. The complaint alleged that defendant, an Illinois corporation, had been trespassing on plaintiff's property by entering upon said premises, using a portion thereof as a road for vehicular traffic to defendant's property for agricultural purposes; and that plaintiff had given defendant several notices demanding that the latter cease its trespass; that paper and debris were scattered about plaintiff's property from defendant's vehicles; that defendant had a shorter and more direct ingress and egress to his property other than across plaintiff's property; and finally, that the plaintiff had suffered compensable damages as a result of defendant's trespass. The defendant filed an answer admitting only that it was an Illinois corporation, and that plaintiff owned the property as described in the complaint. The answer asserted as an affirmative defense that a prescriptive easement existed for the benefit of defendant's estate for the purpose of access, therefore permitting defendant to travel across plaintiff's property. Included in the answer was a request for affirmative relief praying the court find that an easement by prescription existed for the benefit of defendant's estate. Attached to the answer as exhibits were two "Title Affidavits". These affidavits were recorded and their respective affiants stated that they and other persons had crossed plaintiff's property for many years in order to reach the land presently owned by defendant.

The properties involved in this litigation are commonly known as the Roller estate and the Fusch estate. The Fusch estate, the defendant's property, is located due south of the plaintiff's property, the Roller estate. Defendant's property consists of 67½ acres of approximately a 97-acre portion of the old Fusch estate, which had been initially purchased from the executor of said estate by Dr. Leonard J. Miller in 1959. An easement appurtenant existed that benefited the southern portion of the Fusch estate crossing over a portion of property known as the Ellis

estate. When Dr. Miller sold the southernmost 29 acres that were appurtenant to the Ellis estate to a Mr. Mathews, Dr. Miller retained an easement benefiting the remaining 67½ acres of his property. In 1964, Dr. Miller sold the northern 67½ acres to Mr. Edward Spencer, who in turn sold the same to defendant in 1968.

The Roller estate is situated north and east of that portion of defendant's property now used as a landfill. The estate has been in the Roller family since 1911 and had devolved to plaintiff through devise in 1953. The particular portion of land in question is used for agricultural purposes.

The purported easement in question is located on the western edge of the Roller estate. It was originally a rutted country lane that ran north to south for approximately a quarter of a mile beginning at the terminus of an established country road and terminating at defendant's property line. It was adjacent to a hedge row and a dense thicket of brush. The exact location of the lane varied throughout the years it was in existence. In late 1965, after the property had been sold to Mr. Spencer, the brush and timber west of the lane was removed in order to facilitate the erection of power lines that ran to defendant's property. In 1968, the year defendant purchased said property, the country lane was graded, widened and paved with gravel and rock by defendant. The road is used by defendant's three trucks which make several trips per day to its landfill and by any member of the general public who desire to use the landfill. It was uncontroverted that the plaintiff's land had become littered with debris and paper as a consequence of individuals transversing said property in order to gain access to defendant's landfill.

At trial, plaintiff called Mr. Edward Spencer, defendant's vice-president. He testified that in 1964 he purchased the property that defendant now owns from Dr. Miller. In 1965, he improved the land by putting in a basement and running power to the same. He stated that the electrical lines were put up on plaintiff's land just west of the road in dispute. He cleared the brush from alongside the road so that the power company could run its line into his property. He contended that he did not ask for, or secure, plaintiff's permission to run lines over the Roller estate. This contention was directly controverted by plaintiff and plaintiff's wife in their testimony. Spencer testified that in 1968 he sold his land to defendant who then began engaging in landfill activities.

Mr. Edwin Roller testified that the road in question was created in 1957 when Hiram Walker of Peoria requested and received permission to cross the Roller estate in order to exercise timber rights it had on the land that defendant now owns. Plaintiff testified that the construction of the roadway by defendant caused him to lose a strip of land 600 feet by

approximately 20 feet wide that he was unable to cultivate. He stated that prior to 1964 persons who desired to enter or exit from the land now occupied by defendant took a different route that required them to come from the south and ford Salt Creek. However, this road across the creek was discontinued in 1964 when plaintiff gave Mr. Spencer permission to use the roadway in question.

Dr. Miller testified that he had purchased the 97½ acres of the Fusch estate for the purpose of using the land for recreation and farming. He testified that he did cross over the roadway in question in order to gain access to his property but that he did so only with the express permission of Mr. Briggs, plaintiff's tenant. Dr. Miller's specific testimony was:

> "Q. So you went across Mr. Roller's land?
> A. Yes.
> Q. In doing so, did you acquire permission from Mr. Roller?
> A. Yes, when I bought the property, I went to Mr. Briggs, who was Mr. Roller's tenant, and I asked him if there was any objection and did I understand that I could use that road, and he said I could so long as I stayed out of the crops. * * *"

On cross-examination by defendants' counsel, Dr. Miller characterized the purported roadway as a field lane. Dr. Miller's testimony was:

> "Q. Now is this roadway the road you referred to as the way you used to get back to your property? When *you* owned it?
> A. That was not a road then. It was just a field lane."

In an effort to establish the existence of an easement by prescription, the defendant called Mr. Spencer, Clarence Smith and Edward Warrick.

Smith testified that he lived in Logan County most of his 78 years and that from 1920 until 1941 he delivered petroleum products to plaintiff's predecessor in title. He testified that there had always been a road across plaintiff's property which he had used to go fishing on the Fusch estate. Moreover, he had observed other people using it for that same purpose. He testified that the old roadway was farther east from the west edge of plaintiff's property than it presently is because of the dense thicket and hedge rows that bordered the Roller estate. Smith stated that the passage was a narrow unimproved country lane. He stated that he never asked permission of the people who owned the Roller estate when using the passage for he understood that the permission was implied; and was never stopped by the owners of the Roller estate.

Mr. Edward Warrick testified that as early as 1914 and 1915 he used a passage approximately six to eight feet wide in order to cross plaintiff's land to reach a saw mill that was on the property now owned by defendant. He further testified that he had since used the road to go

hunting and fishing whenever he wished and that the road had never been closed. He stated that one time he asked plaintiff's grandfather about using the roadway and was told "You know better than to ask me. Go on." Moreover, he contended that up until approximately five years ago from the date of trial, the lane had been an unimproved dirt road only wide enough for a single vehicle or wagon; but recently it had been widened, graded, and gravel and shale were placed upon it. Mr. Warrick testified that it was a neighborly custom to allow people to cross the land to go fishing.

Plaintiff called Marion Briggs who testified that he had been farming plaintiff's land since 1953. Briggs acknowledged that a lane extending along the western edge of the Roller property had existed on said property since he began farming in 1953. However, Briggs characterized the strip of land in question as being "a place you could go across there" rather than a road.

At the close of all the evidence, defendant was granted leave to amend its answer to allege an easement by implication or necessity and the defendant was also granted leave to file its deed. On July 7, 1972, the court entered an order holding that plaintiff had failed to prove the defendant trespassed on plaintiff's property, therefore plaintiff was not entitled to a permanent injunction enjoining defendant from using the roadway in question. Furthermore, the court found the exhibits and testimony established that defendant had an easement by prescription across plaintiff's land. An order was entered granting defendant the easement by prescription as it now exists. Plaintiff filed a post-trial motion urging several grounds of relief. These motions were denied on September 18, 1972. The plaintiff appealed.

Plaintiff argues that when considering all of the evidence presented at trial in its aspects most favorable to defendant along with all reasonable inference drawn therefrom, there is a total failure of proof of all of the elements of an easement by prescription in favor of defendant against plaintiff's estate. Defendant urges that the existence of a prescriptive easement was clearly established. Moreover, that plaintiff had the burden to rebut the presumption in favor of the use under a claim of right by the public of the roadway in question which was a purported public highway by prescription under Illinois Revised Statutes, 1971, chapter 121, paragraph 2.202.

■■ We cannot agree with defendant. First of all, the question of whether a public easement was established is not before this court, since this theory was not advanced at trial and the trial court found that defendant had a prescriptive easement and nothing more. Also, we find defendant failed to establish the existence of a prescriptive easement.

The Restatement of Property, section 457, states:

> "An easement is created by such use of land for the period of prescription as would be privileged as if an easement existed, provided the use is (1) adverse, and (2) for the period of prescription, continuous and uninterrupted."

In Illinois, the law relating to the establishment of easements by prescription requires the claimant of the estate to show that his use of another's land was open, exclusive, continuous, uninterrupted under a claim of right for the statutory period, and adverse to the servient landowner's interest. *Petersen v. Corrubia*, 21 Ill.2d 525, 173 N.E.2d 499.

■■■ If it can be shown that the use had been made pursuant to the permission of the owner of the servient estate, it cannot be classified as being adverse. (*German v. Wilkin*, 377 Ill. 515, 37 N.E.2d 155.) The evidence usually resorted to in order to establish the permissive nature of a use is a written or oral license; however, the permission may be inferred from the neighborly relationship of the parties or from other circumstances attending the use. (*Piper v. Warren*, 61 Ill.App.2d 460, 210 N.E.2d 71.) Moreover, a use permissive in origin can only become adverse by the interjection of some subsequent events that transform the permissive use into an adverse use; for mere permissive use of land cannot ripen into a prescriptive right regardless of the length of time the permissive use is enjoyed. *Petersen v. Corrubia*.

■■ Proof that a particular use of another's land has in fact occurred normally justifies a presumption that the use has been adverse until this presumption is rebutted by evidence. (*Dunnett v. Hughes*, 399 Ill. 120, 77 N.E.2d 36; see also *Rush v. Collins*, 366 Ill. 307, 8 N.E.2d 659 and *Monroe v. Shrake*, 376 Ill. 253, 33 N.E.2d 459.) However, the Illinois view concerning the presumption of adverse use is limited in that it only arises where all the other elements necessary for an easement by prescription are established and where the origin of the use is not in vacant and unenclosed land. *Poulos v. F. H. Hill Co.*, 401 Ill. 204, 81 N.E.2d 854; see *Rita Sales Corp. v. Bartlett*, 129 Ill.App.2d 45, 263 N.E.2d 356, where the court discusses the holding of *Poulos*.

■■■ Besides the use being adverse, the doctrine of prescription also requires that it be continuous and uninterrupted. The terms *continuous* and *uninterrupted* are not synonymous, but the latter concerns the conduct of the potential servient owner, whereas the former deals with the behavior of the claimant. For a use to be *continuous* it is critical that there be no break in the claimant's or the claimant's predecessor's attitude of mind which would amount to a recognition of subordination to the servient owner's consent or an abandonment of the use in response to the servient owner's demand. (*Petersen v. Corrubia*.) When the courts

of this jurisdiction speak of the period of time during which the use is *uninterrupted* they are referring to that period of time in which there are no acts on the part of the potential servient owner that succeed in causing a discontinuance of the use. When a discontinuance is effected, the running of the prescriptive period is stopped.

■■ Lastly, for a prescriptive easement to be created, the adverse, continuous, uninterrupted and exclusive use must endure for a period of prescription which is 20 years. (*Poulos v. Hill.* Restatement of Property, section 464, notes that successive periods of adverse, continuous and uninterrupted use may be tacked together to compose the required period of prescription if there has been privity between the users. The requisite of privity exists when the latter user has succeeded to the interest of the earlier user by inter vivos conveyance, by descent, by devise, or by involuntary conveyance. R. Powell & P. Rohan, *Powell on Real Property,* vol. 3, ¶ 413, p. 496.

The record in this case reveals that the property in question over which the easement allegedly lies is a vacant, unenclosed field, therefore negating the application of presumption of adverse use. The record also illustrates that prior to 1957, the use of the lane in question was generally by individuals who had no legal interest in the property that defendant currently owns. Their use was permissive and predicated upon neighborly courtesy. Mr. Smith testified he used the road between 1920 and 1941 to deliver fuel oil to plaintiff's predecessors in interest on their land and not the land of defendant's predecessors in interest. Moreover, Mr. Warrick specifically stated that his use of the property was permissive in nature and remained so until the property was sold to Mr. Spencer. The use of the lane by individuals, such as Mr. Smith and Mr. Warrick, could not be characterized as an easement.

It is uncontroverted that in 1959, Dr. Miller, defendant's predecessor in interest, requested plaintiff's agent grant him permission to use the road in question in order to gain access to his property from the north. This request and subsequent grant of permission extinguished any easement that might have existed up to that time. The prescriptive easement could not have begun to be run until 1964, the year Dr. Miller sold the Fusch estate to Mr. Spencer. Assuming that Mr. Spencer's, and his successor's in interest [the defendant's] use of the land in question was adverse, continuous, uninterrupted, exclusive and under a claim of right, it clearly had not been in existence for the necessary 20 years. *Ruck v. Midwest Hunting and Fishing Club,* 104 Ill.App.2d 185, 243 N.E.2d 834.

■■ We are mindful that the question of whether a prescriptive easement exists is a question of fact and that findings of fact by trial court will not be disturbed unless they are manifestly against the weight of

the evidence. (*Ritter v. Janson*, 80 Ill.App.2d 169, 224 N.E.2d 277.) We find that the trial court's finding that defendant had a prescriptive easement for the requisite 20 years was manifestly against the weight of the evidence.

Plaintiff filed a motion for the disqualification of a judge of this court. A hearing was held on the motion and it was denied. As a consequence, defendant filed a motion to recover expenses and attorney fees, pursuant to the Civil Practice Act, section 41 (Ill. Rev. Stat., ch. 110, ¶ 41), incurred when opposing plaintiff's motion. We ordered that defendant's motion be taken with this case.

■■ Illinois Revised Statutes 1971, chapter 110, paragraph 41 states:
> "Allegations and denials, made without reasonable cause and not in good faith, and found to be untrue, shall subject the party pleading them to the payment of reasonable expenses, actually incurred by the other party by reason of the untrue pleading, together with a reasonable attorney's fee, to be summarily taxed by the court at the trial."

While the provisions of paragraph 41 explicitly relate to trials, it has been held that expenses and attorney fees may be taxed on appeal. (*Manchester Insurance & Indemnity Co. v. Strom*, 122 Ill.App.2d 183, 258 N.E.2d 150.) From an examination of plaintiff's motion, we conclude that this is not an appropriate case to tax the incurred expenses. Defendant's motion is denied.

The judgment of the circuit court of Logan County is reversed and cause is remanded for further proceeding consistent with the views herein expressed.

Reversed and remanded.

SMITH and SIMKINS, JJ., concur.