# S. S. RUSSELL

*v.*

# WILLIAM L. HUBBARD *et al.*

1. ADMINISTRATION OF ESTATES—*recovery can not exceed the account filed.* Where a party presents an account against an estate, he is limited in his recovery by the amount claimed, as much as a plaintiff is by the *ad damnum* in his declaration.

2. SAME—*of costs against an estate.* Estates are not answerable for costs on claims filed after the term of the probate court appointed by the administrator for adjustment.

3. SAME—*of costs against an administrator personally.* An administrator can never be made personally liable for costs except upon proof of *mala fides* or gross negligence on his part.

| | |
|---|---|
| 59 | 335 |
| 21a | 565 |
| 59 | 335 |
| 40a | 91 |
| 59 | 335 |
| 149 | 534 |
| 154 | 223 |
| 59 | 335 |
| 165 | 128 |
| 59 | 335 |
| 82a | 295 |
| 59 | 335 |
| 93a 4 | 27 |
| 59 | 335 |
| e202 1 | 328 |
| 59 | 335 |
| 211 | 6277 |

4. SAME—*effect of the two years' limitation—of the judgment.* Where a claim against an estate was not filed until after the expiration of two years from the granting of letters, the judgment therefor can only be paid out of subsequently discovered assets, and which had not been inventoried and accounted for; and in that regard, the judgment should be special, and not general.

5. REMITTITUR—*when and how to be made.* A *remittitur* written in a bill of exceptions after the term at which the judgment was rendered, and in vacation, will not operate to cure an error in the judgment in respect to the matter attempted to be remitted. The remission, to have that effect, should be made during the term of the court, and while the judgment is under its control.

6. LICENSE *to use a wall in building—whether revocable.* Where the owner of a lot of ground contemplated the erection of a frame building thereon, the owner of a brick house situated on the line of an adjacent lot proposed to him that if he would build of brick he might use the brick wall of the house for the purpose of attaching thereto the proposed new building. The proposition was accepted, and the new house was built of brick and attached to the wall of the other building, as suggested: *Held,* that while the license to use and attach to the wall might have been revoked prior to the execution of the purpose of the license, yet, after its execution by the expenditure of money in the erection of the new building, as induced by the permission, the license was irrevocable.

7. SAME—*of the rights of grantees of the respective parties.* The party to whom the license was granted having availed thereof by the erection of his building and attaching to the wall as proposed to him, his subsequent grantee would succeed to his equitable rights in respect thereto.

8. And the party granting the license being estopped from its revocation by reason of its being executed, the conclusive effect of the estoppel would embrace privies as well as parties, and preclude all who claim under the person originally barred.

9. SAME—*statute of frauds.* And in such case, the execution of the parol permission would supply the place of a writing, and take the case out of the statute of frauds.

10. COVENANT—*of a voluntary payment by the covenantee in respect to the matter embraced in the covenant.* Where the party to whom the license was given, and who had executed its purpose, subsequently conveyed with covenant to his grantee against any damages resulting to the latter in respect to the matter of such license, such grantee can not, by voluntarily yielding to a claim based upon an alleged right to revoke the license when such right of revocation did not exist, have any right of action upon the covenant.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. HANNAMAN & KRETZINGER, for the appellant.

Messrs. WILLIAMS & CLARK, for the appellees.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

On the 1st day of February, 1860, Furry, since deceased, conveyed to appellees a lot of ground, and the deed contained the following special covenant: "Whereas, the building located on the premises hereby conveyed, is adjoining and attached to a brick building, formerly owned by Daniel Harman, and the north wall thereof being used as the south wall of the building hereby conveyed, the said party of the first part hereby expressly covenants, to and with the said party of the second part, to indemnify, protect and save harmless from all injury, loss or damages, from the connection of the buildings in the manner aforesaid, from any and all claims from said Harman, or his heirs, administrators or assigns, preferred therefor."

Furry died in 1864, and on the 22d day of February of that year, letters of administration were granted to appellant.

The claim for damages for breach of the covenant, was not filed in the county court until in November, 1867.

The term fixed by the administrator for the adjustment of claims, was in April, 1864.

It was admitted that Harman mortgaged his lot to one Locke, and that the mortgagee had acquired title by a decree of foreclosure, and sale and deed thereunder, and that appellees had conveyed their lot to Anderson & Co.

Locke claimed $250, as damages for breach of the covenant. This amount was paid to him by Anderson & Co., and appellees paid to them the same amount, and now seek to recover it from the estate of the deceased. The claim filed by them, was for only $206, while the judgment rendered was for $288.65.

There are numerous errors, for which the judgment must be reversed.

The claim was not filed at the term selected by the administrator for adjustment. In such case the statute requires that a copy of the claim shall be filed with the clerk, with an order for summons to the administrator to defend the claim. It is also made the duty of the clerk to provide a "Judgment Docket," in which he shall enter the name of the claimant, and the amount of the note or account. (Sess. Laws of 1859, p. 93.)

The judgment should only have been for the amount of the account filed, with interest from the 15th of November, 1867, the date of the payment by appellees. The court evidently rendered judgment for $250 dollars and accrued interest.

By the fair construction of the statute, the claimant is limited in his recovery, by the amount claimed, as much as a plaintiff is by the *ad damnum* in his declaration. The law requires the amount to be filed and docketed, so that the administrator may consent to its allowance, and avoid the expense of litigation. Wherefore the necessity of these requirements, if a larger amount may be proved and recovered? Some effect must be given to the statute, and it would have none if the practice indulged by the court below were followed.

The court rendered judgment against appellant for all costs, both in the circuit and county courts. The statute expressly provides that estates shall be answerable for costs on claims filed at or before the term selected for adjustment, but not after. The claimant had selected his forum, and the statute must control. Its language is imperative, in its application to this case, that the estate was not liable for the costs incurred in the county court.

The attempt to enter a *remittitur*, as to the costs, does not cure the error. The judgment was rendered at the June term. In October following, and in vacation, when the judge was

about to sign the bill of exceptions, he inserted therein a written *remittitur* of the costs. This did not thereby become a part of the judgment. It stands in full force, as originally rendered. The remission should have been made during the term of the court, and while the judgment was under its control. *Rowan* v. *The People*, 18 Ill. 159.

The judgment is erroneous in another respect. Execution was awarded against the administrator, and judgment for the damages and costs was made absolute against him. This was manifest error.

There was no proof of *mala fides* or gross negligence on the part of the administrator, and in the absence of such evidence he never can be made personally liable for costs. Ordinarily, the judgment should be against the goods and chattels of the deceased, in the hands of the administrator to be administered. In this case, as the claim was not filed within two years from the granting of letters, the judgment could only have been for the amount due, to be paid out of subsequently discovered estate, and which had not been inventoried and accounted for. The judgment should have been special, and not general. *Thorn* v. *Watson*, 5 Gilm. 26 ; *Judy* v. *Kelly*, 11 Ill. 211 ; *Peacock* v. *Haven, Adm'r*, 22 Ill. 23 ; *Greenwood* v. *Spiller*, 2 Scam. 504 ; *Welsh, Adm'r*, v. *Wallace*, 3 Gilm. 490 ; *Peck, Adm'r*, v. *Stevens*, 5 Gilm. 127.

But could Locke, as the assignee of Harman, have any benefit of this covenant in the deed from Furry to appellees ?

The covenant recognizes the title in Harman to the lot on which was situated the division wall, and his claim for damages as well as his assigns. Locke, then, having acquired title by virtue of his mortgage and foreclosure, sale and deed thereunder, had the paramount title.

The proof, however, shows an equity in Furry and his grantees, which can not be disregarded.

From the special covenant, it clearly appears that the house had been erected by Furry, prior to his deed to appellees. He had intended to build a frame house, and Harman agreed that

he should have the use of the wall, if he would build of brick. In pursuance of this agreement, a brick building was erected, and the north wall of Harman's house was used as the south wall of Furry's building. Locke's mortgage was not executed until fifteen days after the date of the deed to appellees, so that, prior to the execution of the mortgage, Furry had the use and enjoyment of the wall, and his grantees succeeded to his equitable rights.

By virtue of this agreement, and the erection of the building, equitable rights were acquired. Though the license to use and enjoy the wall might be revoked prior to its execution, after execution, a different question arises, and the possession was constructive notice to the purchaser, of the rights which had been acquired.

Money had been expended upon the faith of the license, and a different and more expensive building erected.

While, ordinarily, it may be true that a parol license of this character is not transmissible, may be revoked at pleasure, and extinguished by alienation of the land, yet, where money or labor has been expended, the law will interpose to protect the licensee. The revocation, under such circumstances, would be fraudulent, and compensation in damages would afford no adequate redress. In such case, the execution of the parol permission would supply the place of a writing, and take the case out of the statute of frauds.

It would be the boldest fraud to allow this permission to be revoked. The grantee of Harman was chargeable with notice of Furry's equity, at the time he took the mortgage, and he stands in the place of his grantor, and is liable to the same equity. The license has been acted upon, and the parties can not be restored to their original position.

Locke is estopped from revoking the license, or claiming damages for the use of the wall, and appellees were not bound, and had no right, to pay the $250, and make such payment the basis of a claim against the estate of Furry. If this could

be done, then he could oust appellees from the possession of the wall.

All the elements which constitute an estoppel, exist in this case. The conclusive effect of an estoppel embraces privies as well as parties, and precludes all who claim under the person originally barred. The erection of the particular building was induced by the agreement; it was relied upon, and pecuniary injury must follow, if it is allowed to be controverted.

This rule must apply as well at law as in equity. *King* v. *The Inhabitants of Batterson,* 6 T. R. 554; *Copeland* v. *Copeland,* 28 Maine, 525; *Shaw* v. *Beebe,* 35 Ver. 205.

We hold that the permission to attach to this wall, after its erection and the expenditure of such an amount of money, is irrevocable, and that privies, as well as parties, are estopped.

In the case of *The Ameriscoggin Bridge* v. *Bragg,* 11 N. H. 102, it was held that a license to build and maintain a bridge on another's land, might be proved by parol, and that the license was either irrevocable, or could only be revoked upon payment of compensation and damages.

In the case of *Swartz* v. *Swartz,* 4 Barr. 353, it was held, upon facts somewhat analogous to the facts of the case at bar, that a parol license was binding by delivery of possession. See also *Rerick* v. *Kern,* 14 Serg. & Rawle, 267.

The judgment is reversed and the cause remanded.

*Judgment reversed.*