Ideal Trading Corporation, an Illinois Corporation, and Brochon Engraving Co., an Illinois Corporation, Plaintiffs-Appellants, v. 237 E. Ontario Corp., an Illinois Corporation and Browne and Storch, Inc., a Foreign Corporation, Defendants-Appellees.

Gen. No. 50,822.

First District, Third Division.

April 13, 1967.

Charles J. Rothbart and Gerald L. Pollack, of Chicago (J. S. Krakauer and Seymour Schriar, of counsel), for appellants.

Seibert and Daniels, of Chicago, for appellees.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court dismissing the amended complaint for want of equity after exceptions to the master's report had been overruled.

The plaintiffs raised two points on appeal, (1) that the court erred in finding that the plaintiffs did not have an irrevocable license, and (2) that the court erred in finding that the agreement of June 25, 1948, was valid and binding in all respects.

The defendant, Browne & Storch, Inc., managed the premises at 235 East Ontario Street, Chicago, Illinois. No evidence was offered against this defendant and the case was dismissed in the trial court as to this defendant. No appeal is taken from that part of the decree.

■■■■■■■■■■■■■■■■■■■■■■

The facts adduced at the hearing before the master in chancery, who heard the case, are voluminous and an effort will be made to set forth only those facts which are pertinent to the issues here.

The action was brought by the plaintiffs to establish that they had a right to use the rear of defendants' property for purposes of ingress and egress to plaintiffs' premises by virtue of an easement by necessity, an easement appurtenant, an easement by prescription, or, in the alternative, that the plaintiffs have an irrevocable license to use defendants' premises. Plaintiffs on appeal abandoned their claim of right to use the premises of the defendant based on an easement of necessity or by prescription, or easement appurtenant by a grant, but only raised the point that plaintiffs have an irrevocable license to use defendants' property.

The parties to this action entered into a stipulation as to some of the facts, and as to the others, evidence was heard and admitted. The following facts were either stipulated to or brought forth from testimony of witnesses.

In the year 1938, Brochon Engraving Co., a corporation, (Brochon) was in possession of the premises at 233 East Ontario Street (233 premises), Chicago, Illinois, as a tenant of the Trust Company of Chicago, as Trustee under Trust No. 309, which was then the owner of the property. The 233 premises contained a three-story brick building built on the front part of the lot. A vacant yard behind the building extended from the building to the rear alley. Brochon also occupied the premises at 235 East Ontario Street (235 premises), Chicago, Illinois, which adjoin the 233 premises to the east. The 235 premises at that time were owned by one Ella Lawes. Brochon was in sole occupancy and possession of the two premises as a tenant and conducted its business from both properties in 1938. In that year, while in possession as a tenant of both premises,

162

Brochon constructed a one-story brick building on the vacant yard that existed at the rear of the 233 premises and connected it to the existing building in the front of the 233 premises. The building then became a single unit on the 233 premises. The addition extended from the rear of the building then on the 233 premises to the alley line and covered the full width of the lot.

At the time that Brochon, as a tenant, built this one-story brick extension building in the rear of the 233 premises, for its use as tenant thereof, it also built a loading dock or platform on the rear of the 235 premises, the building on which premises did not extend to the alley, and which premises were also in the possession of Brochon as the sole tenant. The loading dock was built up against the new extension building and level with two large sliding doors which had been built into the east wall of the newly constructed extension building. The loading dock was level with the rear door of the building on the 235 premises, so that the dock would service both the 235 premises and the 233 premises for the use and benefit of Brochon, which was in sole possession of both parcels as tenant of two separate owners of the properties. At the time Brochon constructed the new one-story addition to the rear of the building on the 233 premises it was necessary to remove the lower half of the fire escape on the rear of the existing building on the 233 premises. The old fire escape from the third floor to the second floor was permitted to remain and Brochon built the roof of the new addition to the 233 premises up to the fire escape and continued the fire escape across the roof of the new building to the rear of the building on the 235 premises and proceeded to construct the fire escape across the rear of the 235 premises and down the east side of said building to the alley.

All of the improvements constructed by Brochon were for its sole use and convenience at a time when it was

in possession of both parcels and had the exclusive right of use and occupancy as to both.

In 1942 Brochon terminated its lease of the 235 premises, but remained in possession of the 233 premises by entering into a new lease with Northwestern University, the then owner of the 233 premises.

Neither the stipulation of facts nor the evidence discloses what, if any, arrangements were made by Brochon for the continued use of the loading platform constructed on the rear of the 235 premises.

In July of 1943 one Carl C. Waterbury acquired title to the 235 premises.

On August 31, 1946, the plaintiff, Ideal Trading Corporation, purchased the 233 premises from Northwestern University. At the time of this purchase Brochon was the sole tenant in possession of the 233 premises. At the time of the purchase of the 233 premises, Ralph Pollack, President of Ideal Trading Corporation, purchased the business and stock of the tenant in possession, Brochon, and took over the name of this corporation and continued operating the business which had been conducted by Brochon. Brochon, now under the ownership and control of Pollack, became the tenant of Ideal Trading Corporation.

On or about September 27, 1946, Mr. Pollack, who had purchased the assets and stock of Brochon, wrote a letter to Mr. Carl Waterbury, the then owner of the 235 premises, in which he purportedly asked permission from Mr. Waterbury to allow him to build a doorway in the east basement wall of the 233 premises under the loading dock for the purpose of permitting Pollack, on behalf of Brochon, to bring heavy machinery into the basement of the 233 premises. On October 1, 1946, Mr. Waterbury acknowledged receipt of Pollack's letter of September 27, 1946, a portion of which reads as follows:

"October 1st, 1946

MR. RALPH POLLACK
233 East Ontario St
Chicago, Illinois

Re yours of Sept 27

We are always pleased to cooperate with a neighbor. We will be glad to permit you to cut through our retaining wall within the well at the rear of our building. . . ."

While Mr. Waterbury referred in that letter to a retaining wall, the facts reveal that the wall is not a retaining wall as such, nor is it a party wall, but merely a wall that is built within the lot line of plaintiffs' property, 233 premises.

It is the contention of the plaintiffs, based upon the above facts, that they have acquired an irrevocable license to use the 235 premises.

In 1948 Mr. Waterbury, the owner of the 235 premises, conveyed that property to Liberty National Bank of Chicago, as Trustee, under which trust Sidney Goldstein, an attorney, was a beneficiary.

Thereafter, on June 25, 1948, an agreement was entered into between Liberty National Bank of Chicago and Ideal Trading Corporation, the owner of the 233 premises, wherein the bank represented and warranted that it held title in fee simple to the real estate known as the 235 premises, and Ideal Trading Corporation represented and warranted that it was the owner of the real estate adjoining the 235 premises to the west. The agreement recited that Ideal Trading Corporation desired to afford itself ingress and egress through the easterly wall of its premises and upon the 235 premises; that Ideal Trading Corporation has a door through their easterly wall leading to and upon the shipping dock in

the rear of the 235 premises, and has a door in said easterly wall through its basement leading into and upon the rear of the 235 premises; that the owner of the 235 premises desired to permit the owner of the 233 premises to use the existing method of ingress and egress upon certain terms. In that agreement, giving permission to use the 235 premises, the owner of the 233 premises acknowledged that except for the license contained in the agreement it was "not possessed of or vested with any claim of right, or color of title, or title, or to any part of the said land or building," on the 235 premises. The owner of the 233 premises covenanted in that agreement that the use of that portion of the 235 premises, permitting it ingress and egress, could not at any time be deemed or construed to be a hostile possession of any portion of the land or real estate of the 235 premises. The license granted in this agreement was given on a month to month basis, and the agreement further provided that the license would cease and terminate upon a thirty day written notice sent by the owner of the 235 premises to Ideal Trading Corporation, the owner of the 233 premises.

During 1961 the defendant, 237 E. Ontario Corp., acquired ownership in fee simple to the 235 premises. During the latter part of 1961 the defendant, 237 E. Ontario Corp., served written notice upon both plaintiffs purporting to terminate all of their rights in and to or upon the 235 premises.

Plaintiffs thereafter filed this suit on December 22, 1961.

As heretofore mentioned, the claims of the plaintiffs based upon various types of easements have not been raised on this appeal, and the plaintiffs only contend that they have an irrevocable license to the use of the 235 premises. The theory of the plaintiffs is that the permissive letter from Mr. Waterbury constituted a li-

cense upon which the plaintiffs acted in good faith and expended large sums of money in improving the 233 premises.

One of the cases upon which plaintiffs rely is Russell v. Hubbard, 59 Ill 335. That case, however, is not controlling here. The facts in the Russell case were that a party had intended to build a frame house on a lot adjoining that upon which a brick building was standing. The owner of the lot on which the brick house was standing induced the owner of the adjacent lot to build a brick instead of a frame house, and the owner of the existing brick house permitted the adjoining lot owner to use a wall of that house as a party wall. It was contended later that this constituted merely a revocable license. The court in deciding that case, on page 340 stated: "Money had been expended upon the faith of the license, and a different and more expensive building erected." In that case the licensor was benefited by getting the licensee to change his building from a frame building to a brick building, and is therefore not applicable here. In the case before us the 235 premises were not in any way benefited by the use of those premises by the owner or occupant of the 233 premises.

The plaintiffs also cite Petersen v. Corrubia, 21 Ill2d 525, 173 NE2d 499. In that case the court concluded that more than twenty years of adverse, exclusive and uninterrupted use invested the plaintiff with an easement by prescription. In the case at bar there is no easement by prescription, and all of the work and expenditures made by the plaintiffs were for their sole benefit. In the letter from Waterbury to Pollack, dated October 1, 1946, Waterbury merely said he would be glad to permit Pollack as a neighbor to cut through the wall. As near as we can determine, the wall did not belong to Waterbury but was wholly on the 233 premises. Waterbury further, in that letter, cautioned Pollack to in-

struct the men to keep the rear of the premises clear of dust. He explained that they manufactured a transparent item and all of their worries were due to dirt, and further said: "Therefore, will you please see to it that there is a minimum of dirt and dust when the break through is made." The 235 premises received absolutely no benefit from the permission given by Waterbury, but, on the contrary, received a detriment due to dirt and dust which necessarily had to be created by the breaking through of the wall on the 233 premises.

It will be noted that the letter of October 1, 1946, did not refer to the installation of a doorway but referred only to a permit with reference to a retaining wall. We heretofore pointed out that there was no retaining wall.

 In Baird v. Westberg, 341 Ill 616, 620, 173 NE 820, the court said:

> "Forbes v. Balenseifer, 74 Ill 183, was a driveway case, where a driveway arrangement between the parties was held to be a mere license, revocable at any time, and did not constitute an easement. In that case the rule enunciated in Russell v. Hubbard, supra, was distinguished and the doctrine of estoppel limited to that class of cases where large sums of money had been expended under the license, *partly for the benefit of the licensor,* and where the position of the licensee had been so changed *at the request of the licensor* that he could not by revocation be restored to his original position or be compensated in damages." (Emphasis supplied.)

Since the specific work involved was cutting the door in the east wall of plaintiffs' own property, it cannot be considered a license. The only permission that Waterbury could have given was to enter upon the 235

168

premises so that the workmen could cut through the wall of the 233 premises. In any event, since the work in question was for the sole benefit of the 233 premises and involved a detriment to the 235 premises, the plaintiffs have failed to prove that an irrevocable license was created. At the time of the construction of the loading dock on the 235 premises, which was used also for the benefit of the 233 premises, the plaintiffs were in complete possession and control of both premises, and no right was established in favor of one of the premises over the other. When the plaintiffs made the expenditures for the construction of the addition to the 233 premises, there is no evidence that any license was granted to the plaintiffs by the then owner of the 235 premises, namely, Ella Lawes. The addition was built for the sole benefit of the plaintiffs, and, certainly, an irrevocable license cannot be predicated upon expenditures made without a license. The claim of the plaintiffs to an irrevocable license must be denied.

The next point urged by the plaintiffs is that the court erred in finding that the agreement of June 25, 1948, was valid and binding in all respects. The agreement of June 25, 1948, has been referred to in the factual statement regarding this case.

The agreement as noted was made between the Liberty National Bank of Chicago as Trustee under Trust No. 372, and plaintiff, Ideal Trading Corporation. It recited that the parties each owned one of the parcels of real estate in question. The Liberty National Bank owned the 235 premises and Ideal Trading Corporation owned the 233 premises. The agreement set forth that Ideal Trading Corporation as owner of the 233 premises covenanted that it had no claim of right, or color of title, or title, to any part of the land or building at 235 East Ontario Street other than the license, meaning the letter which had been written by Waterbury to Pol-

lack. The agreement further stated that the plaintiff covenanted that its use of the property in question should not at any time be deemed or construed to be a hostile possession of any portion of the land or real estate of the 235 premises, and that Ideal Trading Corporation wished to obtain ingress and egress through the east wall of the 233 building from the premises of the 235 building. It recited the presence of a door in the east wall of the new addition of the 233 premises leading to the shipping dock installed at the rear of the 235 premises, and described the door in the east wall of the basement portion of the addition to the 233 building below the loading dock. The substance of the agreement was that the owner of the 235 premises consented to the use by the owner of the 233 premises of the shipping dock which was the sole property of the 235 premises, and consented to ingress and egress from the basement and first floor doors on the east wall of the addition to the 233 premises. The owner of the 235 premises licensed all said use on a month to month basis and provided that it could be terminated upon thirty days written notice.

The facts and circumstances with reference to the execution of the agreement are as follows:

█ Sidney J. Goldstein testified that he was one of the beneficial owners of the 235 premises from July 5, 1947, to July 9, 1961, and that the plaintiffs had never claimed any right to the use of the loading dock, the basement door or the fire escape. He had spoken to Ralph Pollack after he took possession of the 235 premises. He discussed the loading dock and the basement doors with Pollack and told Pollack that he could continue to use the entrance for ingress and egress subject to termination at will, and that Pollack agreed with this arrangement. Goldstein then prepared the agreement dated June 25, 1948, and readily obtained Pol-

lack's signature. Pollack denied that he had such a conversation with Goldstein; he stated that Goldstein tendered the agreement to him and he signed it on the strength of Goldstein's statement that it did not mean anything; that it was not important, and if he did not sign it Goldstein could close up those openings. Pollack, however, testified that he read the agreement before signing it. The master in chancery concluded to accept the version advanced by Mr. Goldstein after weighing the testimony. The findings of the master, when approved by the trial court, cannot be disturbed by the reviewing court unless manifestly against the weight of the evidence. Kioutas v. City of Chicago, 59 Ill App2d 441, 208 NE2d 587, and cases therein cited. We do not consider the findings of the master manifestly against the weight of the evidence.

■ ■ The plaintiffs, in support of their argument that the agreement was not valid, cite Moehling v. W. E. O'Neil Const. Co., 20 Ill2d 255, 170 NE2d 100, wherein the court on page 265 said:

> "One of the essential requirements of law for the formation of a contract is a valid consideration, the general rule being that consideration must flow from both parties, (Corbett v. Cronkhite, 239 Ill 9), and it is likewise elementary that an executory contract without consideration cannot be enforced either in a court of law or one of equity."

■ Plaintiffs overlooked the fact that the consideration involved, which flowed to the plaintiffs in this agreement, was the use of the 235 premises by the owners of the 233 premises under a written license. Without this agreement the owners of the 235 premises could have immediately deprived the 233 premises of that use. The master concluded that the agreement in question was signed by the parties in good faith and without

171

duress, undue influence or threats, and that the agreement is binding upon the parties without any legal or equitable impediment. The forbearance of the owner of the 235 premises from terminating the use of its premises by the adjacent owner, and the agreement of the owner of the 233 premises to cease from its accustomed use upon thirty days written notice, we find to be good and valuable consideration.

The 235 premises were purchased during 1961 by the defendant, 237 E. Ontario Corp. The attorney who represented the defendant testified that after the inspection of the 235 premises in relation to the 233 premises, he contacted attorney Sidney J. Goldstein and obtained from him a copy of the written agreement of June 25, 1948. He further testified that he and defendant, 237 E. Ontario Corp., his client, relied upon this agreement in consummating the purchase of the 235 premises. The agreement had been signed more than twelve years prior to the purchase of the property in 1961 by the 237 E. Ontario Corp. During all of that time the plaintiffs did nothing to rescind the agreement, which they claimed was obtained by duress. We agree with the findings and conclusions of the master in chancery, and the decree of the trial court, that the agreement of June 25, 1948, was a valid and binding agreement, and the finding in this respect is not contrary to the manifest weight of the evidence.

The plaintiffs attempted to prove that Mr. Goldstein, who became one of the beneficial owners of the 235 premises, had been employed by the owner of the 233 premises at the time of the execution of the agreement of June 25, 1948, and had perpetrated a fraud on his client. We have thoroughly examined the evidence and conclude, as did the master and the court, that the evidence not only fell far short of proving a fraud but that it even failed to prove that attorney Goldstein was in the employ of the owner of the 233

172

premises at the date of the signing of the written agreement of June 25, 1948.

The decree of the trial court herein must therefore be affirmed.

Decree affirmed.

SCHWARTZ and DEMPSEY, JJ., concur.