PAUL MERCER *et al.,* Plaintiffs-Appellees, *v.* WALLACE F. STURM *et al.,* Defendants—(WALLACE F. STURM, Defendant-Appellant.)

(No. 72-139; ■■■■■■■■)

Third District—March 1, 1973.

F. R. VanHooreweghe, of Kehr and VanHooreweghe, of Chillicothe, for appellant.

James S. Brannon, of Peoria, for appellees.

Mr. JUSTICE DIXON delivered the opinion of the court:

A complaint was filed by the plaintiffs, Paul Mercer and Joyce Mercer, for an order enjoining the defendant, Wallace F. Sturm, from interfering with their construction, maintenance, and use of a driveway along the boundary between their property and his but lying on his land. A temporary injunction was issued by the Circuit Court of Peoria County, Illinois; a motion for summary judgment was filed by the defendant and denied; a hearing on the merits took place before the Court without a jury; an injunction was granted which prohibited the defendant from interfering with the plaintiffs' use of the driveway during his lifetime, the defendant having only a life estate in the land he occupied; and the defendant has appealed.

The issues presented are whether a valid and enforceable agreement for use of the driveway was made, or whether the promise given was unenforceable by reason of lack of consideration or lack of a writing; whether merely a revocable license was created and was subsequently revoked, or whether it later could not be revoked; and whether the Circuit Court committed reversible error in not allowing the defendant's motion for summary judgment.

The plaintiffs, Paul and Joyce Mercer, had bought their property, a little more than an acre of land on the side of a hill in a rural area, for a home site, purchasing it on June 4, 1968, from the defendant's brother. A short time earlier, in the spring of 1968, Paul Mercer had asked the defendant for an easement to use part of the defendant's lane running along the property line as a driveway for the house he planned to build.

The lane was at that time just a cow path. There are conflicts in the testimony as to what took place between Paul Mercer and the defendant at this earlier meeting.

Paul Mercer testified at the trial that the defendant said he would give him an easement for ingress and egress, without limitation as to time, like that which had earlier been given to a country club; that the defendant wanted the plaintiffs to shape up the land and landscape it; that the defendant said some day one of his sons might want to build a house up on the hill and his road would be a good means of access to it; and that the defendant explained that he did not want to put the easement in writing because he did not want to get involved with his ex-wife, but would consider it a gentleman's agreement.

The defendant testified that he had told Paul Mercer he could not grant an easement because he owned only a life estate in the property, having conveyed the remainder interest to his children, but had said so far as he was concerned the Mercers could use his lane as a driveway, at least until their house was built; that he had mentioned to Paul Mercer that he had had to give the country club an easement because its property was landlocked; and that he had made no requirements for improvement of the land, received no part of the price paid by the plaintiffs for their building site, and made no charge for use of the lane.

During the summer of 1968, after acquiring title to their property, the plaintiffs began work on improvement of the defendant's lane. It was extended about 200 feet to the public highway, smoothed, graded, and graveled, and a culvert was installed. In the summer of 1969 they commenced work on the construction of their new house. Some of the dirt from excavating for the basement and a turn-around was pushed onto the defendant's land. On August 20, 1969, Paul Mercer was sent a letter by the defendant, mentioning the "original verbal agreement regarding the use of the simple road way * * * for ingress and egress" and telling him to make plans immediately to place his driveway elsewhere.

By this time the basement of the home was constructed, the outside shell was up, and work had begun on the roofing and the interior walls. A garage was located in the basement, situated in the rear and opening into a turnaround which led to the property line and the defendant's lane. It was admitted that the house could be reached without use of the lane if another road were constructed from the highway. However, whether the garage could be reached was disputed. The defendant testified that there was a distance of 30 to 40 feet between the house and the lot line, and that it was possible to put a driveway there. Paul Mercer, on the other hand, testified that a driveway could not be put beside the house because of the steepness of the terrain. Paul Mercer testified, further,

that if the defendant had not promised him the use of the lane, the garage would have been situated in the front portion of the house, and that changing the driveway to a different location would require closing in the existing garage and building a new unattached garage on the opposite side of the house.

The plaintiffs rely on the case of *Anastaplo v. Radford*, 14 Ill.2d 526. In that case it was held that an oral promise to grant an easement for a sewer line would be given specific enforcement, an injunction was granted to restrain the defendant from interfering with the sewer which had been constructed by the plaintiff on the defendant's land, and damages were awarded the plaintiff. The existence of an agreement to grant an easement was found; the defendant admitted having seen the sewer while it was being constructed and having made no objection; it was established the plaintiff's motel had had to be shut down because of the destruction and stoppage of the sewer; and the Statute of Frauds was held to be no defense. The court said, at pages 537-539: "The statute is never available as a defense where there has been sufficient performance by one party in reliance upon the agreement. * * * [This] applies to an oral agreement granting a right of way where the agreement is made for a valuable consideration followed by possession and use. * * * Under these circumstances it would be fraud to permit the defendant or his successors to repudiate the agreement by invoking the Statute of Frauds."

■■ The defendant objects that no consideration was given him for his promise. However, there was testimony from which the trial court could conclude that the plaintiffs had undertaken to improve the lane, and that the defendant had requested that this be done for the benefit of himself and also his sons in the event one of them might decide to build a house on the hill. We therefore find that under *Anastaplo* it was proper for the trial court to hold that a valid agreement had been created, that part performance by constructing and grading the lane had followed, that the defendant had stood by and watched the improvement of the lane and construction of the basement garage so as to make use of that lane without making any objection, and that it would be fraud in this case to permit the defendant to annul his agreement by invoking the Statute of Frauds.

■■ The defendant argues that *Anastaplo* involved an agreement for an easement; that in this case there is at the most a license, the defendant having only a life estate and having not undertaken to give any rights in his land except permission to use the land during his own lifetime; and that a license is revocable at will. However, the Supreme Court said, in *Petersen v. Corrubia*, 21 Ill.2d 525, 534, that "this court will not permit the owner of property to revoke a license if in doing so it will operate as

a fraud." It earlier explained, in *Girard v. Lehigh Stone Co.*, 280 Ill. 479, 484: "At law a parol license is revocable though a consideration has been paid or expeditures have been made on the faith of the agreement. [Citations.] Courts of equity, however, will interfere to restrain the exercise of a legal right to revoke a license on the ground of preventing fraud and will continue the license as an agreement to give the right." One of the factors to be considered is whether revocation of the license would deprive plaintiffs of access to their garage. (*Mueller v. Keller*, 18 Ill.2d 334, 343; *Boland v. Walters*, 346 Ill. 184, 189.) We believe from our examination of the record that the trial court was justified in finding that the plaintiffs would be deprived of access to their garage if the defendant could not refuse them the use of his lane, and that to hold the license given by the defendant to be revocable after he had observed the improvement of the lane and construction of the garage in the plaintiffs' basement would be to countenance fraud.

■■ The defendant argues that his motion for summary judgment should have been granted. However, "It is well settled that after an evidentiary trial, a previous order denying a motion for summary judgment is not reviewable." *Sears Roebuck & Co. v. Employers Mut. Liab. Insurance Co.*, 6 Ill.App.3d 10, 12.

There being no reversible error, the judgment of the Circuit Court of Peoria County is affirmed.

Judgment affirmed.

STOUDER, J., and SCOTT, P. J., concur.