ALMA KECK *et al.*, Plaintiffs-Appellees, v. CLARENCE SCHARF *et al.*, Defendants-Appellants.

Fifth District    No. 79-138

Opinion filed January 23, 1980.

John R. Sprague, of Sprague, Sprague & Ysursa, of Belleville, for appellants.

Frederick J. Hess, of Stiehl & Hess, of Belleville, for appellees.

Mr. JUSTICE HARRISON delivered the opinion of the court:
The defendants, Clarence and Lena Scharf, appeal from a decision in the circuit court of St. Clair County pursuant to which a final amended

order was filed on December 13, 1978. That order made permanent a temporary injunction preventing them from encroaching upon a certain roadway which runs from the plaintiffs' farm property across Scharf land to Illinois Route 163, a distance of approximately .04 mile. The court determined in a bench trial that the plaintiffs were entitled to an irrevocable license in the roadway. Appellants argue that the findings of the court did not conform to pleadings in the plaintiffs' complaint and that various other findings of the court were contrary to both fact and law. Because we choose to reverse the trial court's decision that an irrevocable license is the proper remedy under the facts presented, we find no need to discuss the merits of other issues raised by the litigants.

The appellees, Alma Keck, Lydia Keck, Raymond, Elmer and Mathilda Scharf, and Martha Albert (hereinafter referred to as the "Kecks") are all owners of certain real property located in St. Clair County. It is contiguous to and lies immediately west of that owned by the defendants. The present controversy stems from an alleged encroachment said to have arisen in March 1976, when Clarence Scharf plowed under a portion of the above-mentioned road while cultivating his land. The roadway, composed of a crushed rock bed, shoulder and embankments, and drainage ditches running along its length, was narrowed by this action to a claimed one-half of its former width. It was thus passable by single car or truck but rendered useless for wider machinery or passing vehicles moving in opposite directions simultaneously.

Prior to 1941 the Kecks used a different method to reach Route 163. The older route extended across their fields and joined another less serviceable road, also located on Scharf property, which wound out to the highway through hillier terrain. That year Clarence Scharf's father, Adam Scharf, was approached by Walter and Armon Keck and agreed to let them use and improve a field road which at that time extended only part way to the Keck property in a straight line from Route 163. This permitted a flatter, shorter, and easier access to the Keck farmland and required a short extension of the roadbed to reach fully across the Scharf land. The improvements consisted of grading and laying crushed rock along a path approximately 10 feet wide from Highway 163 to the plaintiffs' property. The Scharfs continued to use it as a field road in the process of cultivating their land, while it served for many years as the sole artery of ingress and egress for the Kecks. The latter abandoned the old route previously referred to only to revive its use when the present frictions developed between the parties. Uninterrupted use of the subject road continued from the beginning of World War II until 1976, during which time the plaintiffs put down additional rock on an occasional basis for maintenance purposes.

No written deed ever passed between the parties concerning the roadway. There was no testimony received from which it might be discerned or inferred that any form of oral grant was intended from Adam Scharf to the Kecks. Their agreement, if it may be so called, was never reduced to writing in any subsequent year by any of the successors in title.

On October 26, 1977, the plaintiffs in their amended complaint alleged that the private way in question had been used and maintained by them openly, adversely, exclusively, continuously, uninterruptedly, and under claim of right for more than 20 years. They requested a finding that they be entitled to an interest in the road consisting of a prescriptive easement. In addition, they sought an award of damages in the amount of $3000 to be used to restore the roadway to its former width. The circuit court found that the use of the disputed way was permissive in nature and, lacking the crucial element of adverse control, no prescriptive easement existed. Instead, it was determined the use was by license, that substantial consideration had been given on the faith of the permission, and that to allow the Scharfs to revoke at will would operate as a fraud upon the licensees. The court thus declared the license irrevocable, permanently enjoining encroachment by the defendants, and made provision for allowing the Kecks to maintain the road in the future.

• There is no dispute here that the origin of this way was by permission as the lower court found from ample testimony in the record. Because permissive use was found, it follows that an easement by prescription must be ruled out since the law requires that to establish such an estate adverse use is a necessary element. Where such use is merely permissive it is not adverse; it cannot furnish a basis for claim of prescriptive right, there being essentially the same requirements regarding character of use under this theory as are required to establish title to land by means of adverse possession. The establishment of such an easement is nearly always a question of fact, and this is particularly so in respect to whether adverse or permissive use is found. (*Rita Sales Corp. v. Bartlett* (1970), 129 Ill. App. 2d 45, 263 N.E.2d 356.) It is a proposition hoary with age that a license is not an interest in land, but only a revocable privilege to go upon the land for a specified purpose. An easement is an estate which is irrevocable. (*Mueller v. Keller* (1960), 18 Ill. 2d 334, 164 N.E.2d 28; *Forbes v. Balenseifer* (1874), 74 Ill. 183; *Department of Transportation v. Cavagnaro* (1978), 62 Ill. App. 3d 881, 379 N.E.2d 863.) Mere permission to use land cannot ripen into a prescriptive right, regardless of the time such permissive use is enjoyed. (*Mueller v. Keller*; *Bontz v. Stear* (1918), 285 Ill. 599, 121 N.E. 176; *Ritter v. Janson* (1967), 80 Ill. App. 2d 169, 224 N.E.2d 277.) For instance, in *Bontz* the supreme court determined that a parol agreement concerning a wagon road could

not rise to the level of an interest in the land across which it ran. As in our case the agreement was between adjacent landowners, one allowing the other to cross his property for a period of over 45 years.

■ It is in the nature and definition of a license that it is revocable at the will of the licensor. A verbal license, such as the one in the present case, may be revoked by express notice, by acts which are entirely inconsistent with enjoyment of the use, or by appropriating the land in question to any use contrary to its enjoyment by the licensee. (*Forbes v. Balenseifer.*) Indeed, a parol license is subject to revocation even where consideration has been paid or expenditures have been made in reliance on such an agreement. *Mueller v. Keller; Lang v. Dupuis* (1943), 382 Ill. 101, 46 N.E.2d 21; *Boland v. Walters* (1931), 346 Ill. 184, 178 N.E. 359; *Baird v. Westberg* (1930), 341 Ill. 616, 173 N.E. 820; *Mercer v. Sturm* (1973), 10 Ill. App. 3d 65, 293 N.E.2d 457.

■ Appellees bring to our attention the countervailing proposition that courts of equity will restrain the exercise of the legal right to revoke the license when the conduct of the licensor has been such that the assertion of legal title would operate as a fraud upon the licensee. (See, *e.g., Russell v. Hubbard* (1871), 59 Ill. 335; *Mercer v. Sturm.*) So that the exception not consume the rule which it qualifies, a closer analysis is required. From the beginning our supreme court has sought to temper this exception. In discussing the rule of *Russell,* only three years after its decision, the court stated that its intention there had been to hold only that cases may arise under whose facts revocation would be "a great wrong and oppression * * *." (*Forbes v. Balenseifer* (1874), 74 Ill. 183, 186.) The estoppel to revoke was further limited by specific requirements. In referring to *Russell,* the court stated:

> "In that case the doctrine was limited to cases where *a large sum of money* had been expended under the license, *partly for the benefit of the licensor,* and *the position of the licensee had been so changed at the request of the licensor that he could not on a revocation be restored to his original position or be compensated in damages,* and having been induced by the licensor to so act, it would have been a fraud to permit a revocation, and that the facts of that case were held to take it out of the general rule which was stated and fully recognized, that the licensor might revoke at pleasure." (Emphasis added.) 74 Ill. 183, 186; see also *Baird v. Westberg; Ideal Trading Corp. v. 237 E. Ontario Corp.* (1967), 82 Ill. App. 2d 160, 227 N.E.2d 150.

● 6 Under the present facts we find that the road came into habitual use at the prompting of the licensees and for their primary benefit. It was not induced by the affirmative efforts of the licensor. Adam Scharf was possessed of a usable field road which at the time of the agreement was adequate for his purposes. It is true that afterwards the pre-existing

section was rocked where once it had been only packed earth, but this small benefit must surely be outweighed by the farmland which was given over from previous cultivation. It is not impossible or even impracticable to restore the appellees to their original position; indeed, they have already reached that position by their own action. No large sums of money were ever expended in construction or maintenance when it is considered that the Kecks acquired a right-of-way for no more than what it would have cost had the road run entirely on their own land. Perhaps they have been inconvenienced and put to expense currently, but these considerations do not present the kind of intolerable hardship which estoppel is called upon to prevent. By way of illustration, the case of *Mercer v. Sturm* presents a factual situation which more suitably fits within the estoppel doctrine. There the licensor permitted use of an existing lane, contained within, but running along the border of his property, in order to provide access to a garage to be situated beneath a house that the licensee intended to construct on an adjacent lot. Parol permission was granted in early 1968. There was evidence that the drive could not be constructed on the licensee's own land because of steep terrain. As a result of the permission given he proceeded to build the house and garage, extended the lane approximately 200 feet at his own expense, and extensively improved the roadway by grading and surfacing. Additionally, the licensor contemplated future uses for such an improved road which he related at the time, along with reasons why he did not wish to reduce the agreement to writing. Then, in August of the following year, the licensor attempted to revoke. At that time it would have been necessary for the licensee to close up the existing garage, build a new one on the opposite side of the house, and put in a new driveway. The court found that to allow the revocation of the license would be to countenance fraud. In the cause presently before us, nothing of the sort has transpired. The facts betray that what once, and for many years, existed between these friendly neighbors was a neighborly understanding and nothing more. It was originally intended as a genuine and obvious benefit to one without significant cost or benefit to the other. The relief initially sought by the appellees is not warranted as the trial court properly determined, but neither are they entitled to any greater interest than a license in the roadway and it is the prerogative of the licensor to continue, condition or revoke that license at his will.

For the reasons stated, we hold that the evidence failed to support the trial court's finding of an irrevocable license in favor of plaintiffs. We therefore reverse the judgment of the circuit court of St. Clair County.

Reversed.

JONES, P. J., and KARNS, J., concur.