**In re Frank Carl WOLFF and Frank's Service Center, Inc., Debtors.**

**FRANK'S SERVICE CENTER, INC., Plaintiff,**

v.

**AMOCO OIL COMPANY, an Indiana corporation, Defendant.**

**Bankruptcy Nos. 80 B 12339, 80 B 12340.**

**Adv. No. 81 A 0735.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 1, 1984.

John Ruddy, Ruddy, Myler, Ruddy & Fabian, Aurora, Ill., for debtor.

David M. Bernick, John R. Teitgen, Kirkland & Ellis, Chicago, Ill., for Amoco.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter came before the court on the defendant's (Amoco) motion for summary judgment on the plaintiff's (Wolff) complaint for declaratory judgment regarding an easement or license for access to certain real estate. This court, having carefully considered the pleadings, memoranda, depositions and affidavits submitted by the parties along with applicable case law, renders the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Frank Wolff is a former Amoco dealer who leased and operated an Amoco service station. Wolff owns property adjacent to that station upon which he has constructed an auto repair garage and a car wash. Wolff seeks a declaration of his rights of access to this garage and car wash because confirmation of his Plan of Reorganization under Chapter 11 of the Bankruptcy Code depends upon status of that access.

Wolff, apparently as lessee, first operated the Amoco service station located at the corner of Lake Street and Illinois Avenue in Aurora, Illinois in 1960. Subsequent leases and renewals date from at least since 1973. Those leases were substantially similar except for the rent structure and the duration. The leases provided that so long as the premises were used in a lawful manner, that the direction and control of the premises was to remain with the lessee.[1] The leases also contained provisions prohibiting the lessee from encumbering the leasehold interest[2] and stated that the leases set forth the entire agreement between the parties.[3] The leases for the service station property continued in effect until Amoco terminated them in 1981.

---

1. Paragraph 14 of the leases, which were substantively the same, provides:
   14. None of the provisions of this lease shall be construed as reserving to Lessor any right to exercise any control over the business or operations of Lessee conducted upon the leased premises or to direct the manner in which any such business or operations shall be conducted, it being understood and agreed that so long as Lessee shall use said premises in a lawful manner as herein provided, the entire control and direction of such activities shall be and remain with Lessee.

2. Lessee will not assign, mortgage or encumber this lease ... and will not allow any lien or encumbrance to be placed upon the leasehold interest hereby created or any part thereof, without first obtaining the written consent of Lessor. (Par. 8).

3. The lease executed after building the car wash (1976) provided:
   ...[A]ll obligations, agreements, and understandings with respect to the leased premises [are] expressly set forth herein. (Par. 17).

In 1972, Wolff purchased an adjacent parcel of property (Lot 12) immediately north of the service station, tore down an existing house from the front portion of the property and constructed an auto repair garage at the rear of the parcel. Access to the repair garage was via the northernmost portion of the lot. Amoco provided Wolff with equipment for use in the garage, and made other improvements for Wolff. In 1979, Wolff sold to Amoco the eastern portion of that property which fronts on Lake Street and which provides access from Lake Street to the repair garage. Wolff reserved in that deed an eight foot easement over the front portion of the property.

In 1974 Wolff purchased property (Lot 8) on the other side of the corner immediately west of the gas station and constructed a car wash. Wolff consulted with the Amoco representative during construction of the car wash but reserved no rights of access thereto. Initially access was no problem since Wolff leased the service station from Amoco.

Wolff expended considerable sums of money on both business ventures. Amoco provided Wolff with certain improvements for both the garage and the car wash and apparently received the benefit of increased gasoline and related product sales resulting from the operation of the garage and the car wash. It is undisputed that Wolff would have to expend substantial sums of money to modify the access to his garage and car wash if his claims of access over the gas station property are denied.

Wolff claims in his affidavit that he was told that he would have access to both parcels and that he has been given a license which this court should determine Amoco is estopped from revoking because to do so would perpetrate a fraud upon Wolff. Amoco asserts that access was pursuant to the lease during its duration, that the lease specifically precluded the grant of any license and even if the court determined that a license had existed, that Amoco could revoke it at will.

## ISSUES

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, this court may grant the defendant's motion for summary judgment if "the pleadings, depositions, answers to interrogatories together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." Fed. R.Civ.P. 56(c). In the present case, the parties' depositions and exhibits do not differ materially. Although the plaintiff submitted an affidavit which directly contradicts his deposition testimony, that affidavit is clearly insufficient to create any *genuine* issue of material fact. Therefore, summary judgment for Amoco is proper if the following questions of law are resolved in its favor:

1. Whether an irrevocable license has been created for the entire eastern portion of Lot 12 for expanded access to Wolff's repair garage.

2. Whether an irrevocable license for access across the service station property was created for access to the car wash located on Lot 8.

## DISCUSSION

A license is permission or authority to do particular acts upon the lands of another, with no estate or interest in the land created. *Morse v. Lorenz,* 262 Ill. 115, 118, 104 N.E. 237 (1914); Illinois Law & Practice, *Licenses With Respect to Real Property,* § 131 at 148. Generally, a license is revocable by the licensor at will. *See, e.g., Woodward v. Seely,* 11 Ill. 156 (1849); *Morse v. Lorenz,* 262 Ill. 115, 120, 104 N.E. 237 (1914) (stating that the reason for that rule was that oral agreements are easily misunderstood).

Illinois courts have tempered those rules by fashioning a "fraud exception" to the rule that licenses are revocable at will. *See, e.g., Russell v. Hubbard,* 59 Ill. 335 (1871). In order to prevent the exception from swallowing the rule, the Illinois Supreme Court determined that it would be

applied only where revocation would cause great wrong and oppression. *Forbes v. Balenseifer*, 74 Ill. 183, 186 (1874). The notion was that an estoppel operated to prevent the licensor from revoking the license, *Keck v. Scharf*, 80 Ill.App.3d 832, 836, 36 Ill.Dec. 83, 400 N.E.2d 503 (1980). The court in that case further delineated the requirements of the fraud exception to the revocability of licenses. Those requirements are:

1. that the licensee has spent substantial sums of money which were induced by the affirmative efforts of the licensor;

2. that the improvements which the licensee made were at least partly for the benefit of the licensor; and

3. that the revocation would result in an injury which would amount to great wrong and oppression. *Id.* at 836–37, 36 Ill.Dec. 83, 400 N.E.2d 503.

▉ Upon applying those rules of law to the facts regarding the garage access, it is apparent that no license was ever created. Therefore, there was none to revoke, and the estoppel doctrine simply cannot apply. Although there is evidence that Amoco received some benefit from Wolff's improvements, and evidence that Wolff will be required to alter his premises should the access he seeks be denied, Wolff's claim of irrevocable license to the garage access fails for several reasons. First, there is no credible evidence of an oral permission in the first place. As Amoco has argued, and Wolff himself testified at deposition, he needed no permission because initially he owned the property and later his lease gave him the right to control its use. Moreover, Wolff reserved an eight foot easement for himself. He is not entitled to more.

Although there was no evidence of the parol permission required to create the license, there is additionally no evidence that Amoco "induced" Wolff to spend money on the garage. By his own testimony, the garage "was his idea." Because no parol permission was granted which would give rise to a license, and secondarily because Amoco did not induce Wolff to build the garage, Wolff's access to that garage must be limited to that which he reserved in writing for himself.

This court further concludes that there has been no irrevocable license created for access to the car wash. In similar fashion to the garage access, Amoco derived benefit via increased product sales from the construction of the car wash. Wolff would suffer harm if the access is denied. However, once again, there is no evidence of oral agreement (Again, none was necessary). Nor was there evidence of Amoco inducing Wolff to build the car wash. This court can find no authority for the proposition that simply knowing of a course of conduct, and even assisting it, in the absence of permission, can give rise to a license which can later become irrevocable upon an estoppel theory.

▉ Although Wolff relies heavily upon the case of *Mercer v. Sturm*, 10 Ill.App.3d 65, 293 N.E.2d 457 (1973), to establish his claim of licenses for both parcels, that case is clearly distinguishable on the basis of precisely that element which Wolff's case lacks. In *Mercer*, parol permission was given. In the instant case, it was not. Wolff apparently proceeds upon some sort of generalized estoppel theory for which no case authority is cited. The case law clearly states that parol permission is required to establish the license, which the licensor is then estopped from revoking. (Wolff may also realize this, since subsequent to his deposition in which he testified that oral permission was not given for the garage or the car wash, he later prepared a contradictory affidavit in which he claimed it had been granted).

Thus, Wolff's claims to access must fail because there was no verbal agreement or permission. Under the leases, none was needed. Absent that element, no licenses were created.

## CONCLUSION

In summary, the court finds that Wolff's access to the garage via Lot 12 is restricted to that easement which he expressly reserved when he executed the deed to Amo-

co. Second, no irrevocable license was created to provide access to the car wash on Lot 8 across Amoco's service station property.

This court hereby grants summary judgment in favor of the defendant Amoco Oil Company.